IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | | |
|---|---|---|
| ECO TOUR ADVENTURES, INC., | ) | |
| 2179 Corner Creek | ) | |
| Jackson, WY 83001, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SALLY JEWELL, *in her official capacity as* | ) | |
| Secretary of the Interior, | ) | |
| 1849 C Street, NW | ) | |
| Washington, DC 20240, | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE | ) | Case No. _____ |
| INTERIOR, | ) | |
| 1849 C Street, NW | ) | |
| Washington, DC 20240, | ) | |
| | ) | |
| JONATHAN JARVIS, *in his official capacity as* | ) | |
| Director of the National Park Service, | ) | |
| 1849 C Street, NW | ) | |
| Washington, DC 20240, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NATIONAL PARK SERVICE, | ) | |
| 1849 C Street, NW | ) | |
| Washington, DC 20240, | ) | |
| | ) | |
| Defendants. | ) | |

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Eco Tour Adventures, Inc. ("Eco Tour"), by and through its undersigned

attorney, complain of defendants as follows:

1

**INTRODUCTION**

1.      This Complaint concerns the actions of the United States, acting through the United

States Department of the Interior and its underlying agency, the National Park Service

("NPS")(collectively referred to as "defendants").  NPS failed to follow explicit federal

regulations which required it, based on the undisputed facts, to award two non-procurement

contracts involving concession operations to Eco Tour.  36 C.F.R. § 51.31.  NPS also violated

the applicable law by instead awarding the contracts to NPS's long-time incumbent contractors

who had submitted non-responsive proposals.  The illegality of NPS's conduct has already been

determined by the United States Court of Federal Claims which found that NPS's incumbent

contractors had failed to submit responsive proposals.  Thus, NPS was required by law to reject

those proposals.  In addition, pursuant to the NPS's explicit concession regulations at 36 C.F.R. §

51.31, NPS was mandated by law to award the contracts to Eco Tour because NPS had evaluated

Eco Tour's proposal as the best among all proposals received.  However, while the Court of

Federal Claims determined that the incumbents' proposals were non-responsive and should have

been rejected, the court concluded that it did not have sufficient authority to provide injunctive

relief and require the agency to follow the law.


2.      Taking advantage of this determination as to the Court of Federal Claims lack of

authority to provide full relief and with total disregard for that court's clear finding that NPS's

conduct was illegal, and also being aware that Eco Tour was a very small company which could

not afford the costs of litigating against the federal government, NPS proceeded to award the two

non-procurement contracts to its long-time incumbent contractors in violation of the law.  In an

effort to avoid further costly and unnecessary litigation and because NPS's illegal actions had

denied it the funds needed to further pursue litigation against the federal government, Eco Tour

engaged in extensive efforts to essentially beg defendants to comply with the law.  These efforts

were to no avail, forcing Eco Tour, now bereft of sufficient funds, to find counsel willing to take

on its case against the federal government for the public interest at stake.


3.      Unlike the Court of Federal Claims, Congress has granted this Court the authority (and

Eco Tour respectfully represents, the duty) to bring an end to defendants' illegal conduct, which

is why Eco Tour has filed this action.


4.      Eco Tour seeks through this action an order from this Court declaring that the two

contracts awarded to NPS's longtime incumbent contractors are illegal and thus void.

Eco Tour also seeks an injunction requiring the defendants to comply with the clear and

unequivocal terms of the regulations which apply to NPS concession matters and which,

in this particular matter, explicitly mandate that NPS award the two contracts to Eco Tour

for their full 10-year terms, beginning in the 2015/2016 winter season.  36 C.F.R. § 51.31

("The concession contract will be awarded to the offeror submitting the best responsive

proposal")(emphasis added).


5.      Injunctive relief is clearly merited.  Because defendants (as well as their incumbent

contractors to whom defendants awarded the contracts at issue) have egregiously unclean hands

by deliberately and knowingly proceeding with an illegal award of the two contracts, defendants

and the incumbent contractors have no basis to object to the Court issuing such relief.

3

## JURISDICTION AND VENUE

6.     The claims asserted herein arise under the Administrative Procedure Act, 5 U.S.C. §§ 500

*et seq.*, the National Park Service Concessions Management Improvement Act of 1998, 16

U.S.C. § 5951 *et seq.* and its implementing regulations set out at 36 C.F.R. Part 51.  This Court

has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and may issue

the requested relief pursuant to 28 U.S.C. § 2201 (declaratory relief) and 28 U.S.C. § 2202

(injunctive relief).


7.     The defendants have waived sovereign immunity for the actions at issue pursuant to 5

U.S.C. § 702 because the claims, which do not involve procurements, are not for money

damages, an adequate remedy for the claims is not available elsewhere and the claims do not

seek any relief expressly or impliedly forbidden by another statute.  Moreover, the repeal of

district court jurisdiction in the Administrative Dispute Resolution Act ("ADRA"), Pub.L. No.

104–320, § 12, 110 Stat. 3870, 3874–76 (1996) over any action related to a procurement contract

award determination did not eliminate the district courts' longstanding jurisdiction over

government actions related to the award of contracts which do not involve procurements.  *See*

*Resource Conservation Group, LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir.

2010)("Admittedly, dividing jurisdiction between the Court of Federal Claims and the district

courts for non-procurement bid protests may lead to similar problems that led to the enactment of

1491(b)(1). However, if the statute is to be amended to solve this problem, that amendment must

be undertaken by Congress and not this court").

4

8.      Eco Tour also has standing to bring these claims.  Defendants' determination to award

the two contracts at issue to third parties has caused Eco Tour concrete, present and continuing

injury by denying Eco Tour the benefits of the two contracts at issue to which it is legally

entitled.  Defendants' conduct has also caused harm to Eco Tour's ability to obtain and retain

qualified guides by being able to offer them year-round employment, which the contracts at issue

would allow, and impacts its ability to provide sufficient health care to its employees.

Defendants' conduct has also caused harm to Eco Tour's long-term growth plans.


9.      Defendants' actions are ripe for judicial review under Article III, Section 2 of the U.S.

Constitution, and reviewable as final agency action under 5 U.S.C. § 704 because, after the

conclusion of the Court of Federal Claims proceeding, NPS made a decision to, and has awarded,

the two contracts at issue.  In addition, the award of the two contracts determines legal rights and

obligations by setting forth particular contract obligations, authorizations, duties and benefits.

Withholding judicial review will cause direct and immediate hardship to Eco Tour for which

money damages would be inadequate, even if they were available, but in fact no money damages

are available given that NPS did not award the contracts to Eco Tour.  This fact precludes Eco

Tour from bringing any claim arising under those contracts.  Withholding judicial review will

also permit defendants to successfully, deliberately and wrongfully violate explicit federal

regulations, which is contrary to the public interest.  *See Scanwell Laboratories, Inc. v. Shaffer*,

424 F.2d 859, 864 (D.C. Cir. 1970)(ensuring that agencies follow the regulations which

control government contracting is in satisfy the public interest).   Eco Tour has no other

administrative procedure available to it to pursue, and has fully exhausted all possible remedies, both formal and informal.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 1391(e) because the final decisions at issue here were made on behalf of the Director of the National Park Service, who is located in Washington, D.C.

## PARTIES

11.     Plaintiff Eco Tour Adventures, Inc. ("Eco Tour") is a very small guide business established as a corporation under the laws of Wyoming.

12.     Defendant is the Department of the Interior acting through the NPS.  NPS is an agency of the Department of the Interior, with its headquarters located at 1849 C Street NW, Washington, DC 20240.  Director Jon Jarvis's office is also located at that address.  The Department of the Interior has its headquarters at the same address, which is where Secretary Sally Jewell's office is located.

## STATEMENT OF LAW AND FACTS

### Background

13.     This suit arises out of NPS's actions following its issuance of a solicitation for proposals to enter into two non-procurement contracts with NPS to provide cross-country ski touring services, including guided snowshoe tours and associated transportation and food service, in Grand Teton National Park, and the subsequent decision to make an illegal award of those contracts to NPS's incumbent contractors rather than to Eco Tour, as required by the law.

14.     This suit also comes after Eco Tour filed an action in the Court of Federal Claims, in which the court found that NPS's actions violated applicable regulations, but also concluded that the contracts at issue were not procurement contracts.  *Eco Tour Adventures, LLC v. United States*, 114 Fed. Cl. 6 (2013).  As a result, the Court of Federal Claims determined that it was not authorized to issue full and complete relief for the illegal conduct at issue by issuing an injunction to prevent NPS from following through on its illegal conduct.

15.     While Eco Tour believed that NPS would in fact act in good faith and in accordance with the law after the decision was rendered by the Court of Federal Claims, NPS did not.

16.     Because this Court also has jurisdiction over decisions by federal agencies involving non-procurement contracts, this Court has the authority to issue the remaining injunctive relief to which Eco Tour is entitled given that NPS subsequently awarded the two contracts to its incumbent contractors in direct and flagrant violation of very explicit federal regulations.

17.     Taylor Phillips, the President of Eco Tour, and his company have been providing guided tours in Grand Teton National Park since 2008.

18.     Eco Tour focuses on creating a sustainable touring business to help protect the wild nature of Grand Teton National Park as well as all of our wildlands.  Eco Tour was created with the idea of helping people connect with the natural world through wildlife observation and natural history interpretation.  Consistent with its sustainable business model, Eco Tour is an

environmentally friendly business which, for example, uses biodiesel in its vehicles to decrease its use of petroleum and partners with the Carbon Fund to be a carbon neutral business.

19.     Since 2008 and pursuant to an NPS authorization, Eco Tour has taken visitors on approximately 1,600 trips into Grand Teton National Park, providing a memorable experience to approximately 10,000 visitors.

*Issuance of the Prospectus*

20.     On December 20, 2012, NPS put out a notice that it was issuing a single Prospectus soliciting proposals for three separate contracts to provide guided cross-country ski touring services in Grand Teton National Park.

21.     The new contracts were for 10-year terms.

22.     In the notice, NPS stated that the services being sought were currently being provided by three different companies: Powder Hounds, Inc. (doing business as Rendezvous Ski Tours), Jackson Hole Mountain Resort Corporation ("JHMRC") and The Hole Hiking Experience, Inc. ("Hole Hiking")(collectively "incumbent contractors").

23.     JHMRC is a large ski area located in Jackson Hole, Wyoming with a longstanding relationship with NPS.  Hole Hiking is also a long-time and well-regarded concessioner with NPS and has purportedly been operating in Jackson Hole for 25 years.

24.     The existing contracts with the incumbent contractors were set to expire on October 31,

2013. (The contracts were subsequently extended for one year, through the 2013-14 winter

season.)


25.     The Prospectus stated that NPS had determined that the three incumbent contractors were

preferred offerors.


*Requirements of the Prospectus*

26.     The Prospectus was subject to the terms of the National Park Service Concessions

Management Improvement Act of 1998, 16 U.S.C. § 5951 *et seq*. ("NPS Concessions

Management Improvement Act") and its implementing regulations at 36 C.F.R. Part 51.


27.     The NPS Concessions Management Improvement Act requires NPS to pursue a

competitive selection process for awarding concession contracts by issuing a Prospectus.  16

U.S.C. § 5952(2).


28.     The NPS Concessions Management Improvement Act states, at 16 U.S.C. § 5952(3), that

"[t]he Prospectus shall include [t]he minimum requirements for such contract" as set out in 16

U.S.C. § 5952(4).


29.     Section 5952(4)(A) of 16 U.S.C. states that "[n]o proposal shall be considered which fails

to meet the minimum requirements as determined by the Secretary."

30.     Prior to enactment of the NPS Concessions Management Improvement Act, NPS gave satisfactory incumbent concessioners a preference in the renewal of their contracts by allowing them to match any better proposal which might be submitted for that new contract.  Pub. L. 89-249, § 5, 79 Stat. 970 (1965).

31.     In enacting the NPS Concessions Management Improvement Act, Congress concluded that "[t]rue competition simply did not exist" for NPS's concession contracts given NPS's past practice of providing certain incumbent concessioners with a right of preference to any new contract.  65 Fed. Reg. 20,630 (Apr. 17, 2000).

32.     Accordingly, Congress eliminated NPS's ability to give it a right of preference to its preferred incumbent contractors unless certain very limited and specific conditions were met.  16 U.S.C. § 5952(7), (8).

33.     One of those conditions for avoiding true competition was that a preferred offeror <u>must</u> submit a responsive proposal in order for that offeror to exercise its right to match a better proposal.  16 U.S.C. § 5952(8)(B)(iii), (C)(ii).

34.     The regulations which NPS issued to implement the NPS Concessions Management Improvement Act explicitly state that:

> A *responsive proposal* means a timely submitted proposal that is determined by the Director as agreeing to all of the minimum requirements of the proposed concession contract and prospectus <u>and as having provided the information required by the prospectus</u>.

36 C.F.R. § 51.3 (italics in original; underline emphasis added).

35.     The regulations which NPS issued to implement the NPS Concessions Management Improvement Act also explicitly state that "[t]he Director <u>must</u> reject any proposal received, regardless of the franchise fee offered, <u>if [] the proposal is not a responsive proposal as defined in [36 C.F.R. § 51.3]</u>." 36 C.F.R. § 51.18 (emphasis added).  This regulation applied to any proposals received, including those by the incumbent contractors.

36.     The Prospectus also stated:

>    This Prospectus is issued under the authority of 36 C.F.R. Part 51 (incorporated by reference herein).  In the event of any inconsistency between the terms of this Prospectus and 36 C.F.R. Part 51, 36 C.F.R. Part 51 will control.

37.     Pursuant to 36 C.F.R. § 51.17, the Prospectus set out five principal selection factors, all of which were critical to NPS's ability to effectively evaluate a proposal.

38.     Principal Selection Factor 4 involved an assessment of the offeror's financial capability to carry out its proposal.  36 C.F.R. § 51.17(1)(4).

39.     In order for NPS to effectively evaluate an offeror's financial capability to carry out its proposal, the Prospectus explicitly required that each of the current concessioners provide in its proposal "NPS Concessioner Annual Financial Reports (AFR) [for the two most recent fiscal years], including a current balance sheet if a balance sheet was not submitted as part of the AFR."

40.     In order for NPS to effectively evaluate an offeror's financial capability to carry out its proposal, the Prospectus also explicitly required each offeror to submit in its proposal "[a] CURRENT credit report (within the last six months) in the name of the Offeror from a major credit reporting company such as Equifax, Experian, TRW or Dun & Bradstreet."

41.     In order for NPS to effectively evaluate an offeror's financial capability to carry out its proposal, the Prospectus also stated that "[c]urrent bank statements must be provided, regardless of the funding source selected in items 1-3 above."

42.     In order for NPS to effectively evaluate an offeror's financial capability to carry out its proposal, the Prospectus also explicitly required each offeror, in its proposal, to "fully explain the assumptions on which you base your projections and detail them sufficiently so the Service can determine whether the projections are realistic."

43.     In order for NPS to effectively evaluate an offeror's financial capability to carry out its proposal, the Prospectus also explicitly required each offeror to provide a pro forma income statement with its proposal.

44.     The Prospectus also stated:

k)     If you propose to make any financial commitments and considerations in response to any selection factor, your proposal will be closely reviewed and analyzed against your financial statements and supporting documents with appropriate review of feasibility. Such documents reviewed and analyzed will include but not be limited to the Business Organization and Credit Information,

pro forma income statements, audited or reviewed financial statements, and balance sheets contained in your proposal.

l)      The proposal and related materials submitted should reflect the entire proposal you are making. The Service will consider your written submission as your full and final proposal in response to the Prospectus, and will make its selection based on the written information you have submitted and other appropriate information. Do not assume that the Service knows anything about you or your proposal. Do not assume that any information about you or your proposal, any previous correspondence or previous submissions are in the possession of or will be considered by the Service. This is true even if you are the current concessioner or have operated another concession within the park area or National Park System. In making its selection of the best proposal submitted in response to the Prospectus, the Service has the right, but not the obligation, to consider any other information relating to the matter.

45.     As indicated above, the Prospectus stated that NPS had determined that the three incumbent concessioners were "Preferred Offerors" with respect to the new contracts.

46.     The regulations implementing the NPS Concessions Management Improvement Act define a preferred offeror as:

    [A] concessioner that the Director determines is eligible to exercise a right of preference to the award of a qualified concession contract in accordance with this part.

36 C.F.R. § 51.3.

47.     The regulations also state that, if a preferred offeror's proposal is not determined to be the best proposal, before proceeding with any award, NPS must permit the preferred offeror to match the better terms and conditions of the best proposal rather than immediately award the contract to the offeror which has submitted the best proposal.  36 C.F.R. § 51.32.  If the preferred offeror

amends its proposal to match the better terms and conditions, then NPS must select the preferred offeror for award of the contract.  *Id.*

48.     Importantly, the applicable regulations explicitly state that, as a threshold matter, a preferred offeror must <u>first</u> submit a responsive proposal in order to even qualify for its right to try to match the best proposal.  36 C.F.R. § 51.27(b).

49.     As set out at 36 C.F.R. § 51.27(b):

> A right of preference is the right of a preferred offeror, <u>if it submits a responsive proposal for a qualified concession contract</u>, to match in accordance with the requirements of this part the terms and conditions of a competing proposal that the [NPS] has determined to be the best responsive proposal.

Emphasis added.

50.     Section 51.30 of Title 36 of the C.F.R. reiterates the requirement that a preferred offeror must submit a responsive proposal in order to be qualified to match any other proposals:

> **What must a preferred offeror do before it may exercise a right of preference?**
>
> A preferred offeror must submit a responsive proposal pursuant to the terms of an applicable Prospectus for a qualified concession contract if the preferred offeror wishes to exercise a right of preference.

36 C.F.R. § 51.30 (emphasis in original).

51.     Section 51.31 of Title 36 of the C.F.R. very, very clearly sets out exactly what must happen as a matter of law if a preferred offeror fails to submit a responsive proposal:

> **What happens if a preferred offeror does not submit a responsive proposal?**
>
> If a preferred offeror fails to submit a responsive proposal, the offeror may not exercise a right of preference.  <u>The concession contract will be awarded to the offeror submitting the best responsive proposal.</u>

36 C.F.R. § 51.31 (bold emphasis in original; underline emphasis added).

52.     Proposals submitted in response to the Prospectus were due by March 20, 2013.

53.     Eco Tour expended approximately 960 hours of time in preparing proposals for two of the three contracts to be awarded.

54.     Eco Tour also engaged the assistance of an outside consultant, at a very substantial cost, to assist in the preparation of its proposals.

55.     Eco Tour devoted extensive resources toward obtaining these two contracts, which precluded its ability to pursue other opportunities or other revenue.

56.     On March 20, 2013, Eco Tour delivered its proposals for two of the three contracts, CC-GRTE024 and CC-GRTE032, to NPS.

57.     NPS thereafter evaluated all proposals submitted in response to its Prospectus.

58.     As set out in a letter to Eco Tour dated June 20, 2013, NPS determined that Eco Tour had submitted not only a responsive proposal, but that its proposal was the best proposal for both of the two contracts it sought.

59.     However, in that same letter, NPS informed Eco Tour that NPS would be providing the preferred offerors, its longtime incumbent contractors, with the opportunity to match the better terms and conditions of Eco Tour's proposal.

60.     When a preferred offeror is provided a right to match a better proposal, true competition does not exist.  65 Fed. Reg. 20, 630 (Apr. 17, 2000).

61.     However, as Eco Tour informed NPS and based on information NPS provided to Eco Tour, it was plainly evident that NPS's longtime incumbent contractors had failed to submit responsive proposals.

62.     While the Prospectus explicitly required offerors to provide a balance sheet and Eco Tour did, JHMRC failed to submit a balance sheet with its proposal.

63.     Therefore, while the Prospectus explicitly required a balance sheet, JHMRC failed to provide a balance sheet.

64.     While the Prospectus explicitly required offerors to provide a complete AFR and Eco Tour did, Hole Hiking failed to submit a complete AFR.

16

65.     Therefore, while the Prospectus explicitly required an AFR for 2011 and 2012 to be provided by any incumbent, Hole Hiking failed to provide complete AFRs.

66.     While the Prospectus explicitly required offerors to provide a recent credit report and Eco Tour did, JHMRC failed to submit a credit report.

67.     Therefore, while the Prospectus explicitly required a credit report, JHMRC failed to provide a credit report.

68.     While the Prospectus explicitly required offerors to provide a bank statement and Eco Tour did, JHMRC failed to submit any bank statements.

69.      Therefore, while the Prospectus explicitly required a bank statement, JHMRC failed to provide a bank statement.

70.     While the Prospectus explicitly required submission of a current bank statement and Eco Tour did, Hole Hiking failed to submit a *current* bank statement.

71.     Therefore, while the Prospectus explicitly required a current bank statement, Hole Hiking failed to provide a current bank statement.

72.     While the Prospectus explicitly required the offerors to fully explain any assumptions they made as to future revenues being higher than the revenue amounts projected by NPS, and Hole Hiking made assumptions that future revenues would be higher than those projected, Hole Hiking did not fully explain its assumptions that future revenues would be much higher than past levels and expenses would be very low.

73.      Therefore, while the Prospectus explicitly required each offeror to fully explain its financial projections, Hole Hiking failed to fully explain its projections.

74.     While the Prospectus explicitly required each offeror to submit a correct pro forma and Eco Tour did, Hole Hiking failed to submit a correct pro forma statement.

75.     Therefore, while the Prospectus explicitly required each offeror to submit a correct pro forma statement and Eco Tour did, Hole Hiking failed to provide a correct pro forma statement.

76.     NPS incredulously asserted in a letter to Eco Tour dated July 10, 2013 that, while NPS was now seeking the omitted information from the preferred offerors long after the due date for proposals, the failure of the preferred offerors to include in their proposals key financial data such as (1) current balance sheets, (2) current credit reports, (3) current bank statements, and (4) an explanation for dramatically varying financial projections would not prevent NPS from properly assessing the preferred offerors financial capability to carry out their proposal.

77.     In truth, it was impossible for NPS to effectively evaluate the financial capability of the preferred offerors to carry out their proposal without the key material financial data which they omitted from their proposals.  This is exactly why NPS stated in the Prospectus that every offeror must provide it as part of their proposal and why NPS subsequently sought this information from the preferred offerors (albeit long after the deadline for proposals).

78.     NPS's patently erroneous assertion that the failure of the preferred offerors to include current balance sheets, current credit reports, current bank statements, and explanations for dramatically varying financial projections "were not significant enough to hamper an effective evaluation of the proposals" was made solely as part of an effort by NPS to avoid true competition and award the contracts to its preferred offerors.

79.     Upon being notified by letter dated June 20, 2013 that NPS was providing the preferred offerors with an opportunity to match Eco Tour's best proposal, Eco Tour sought a pre-award debriefing from NPS, pursuant to the terms of the Prospectus, in order to obtain further information as to the basis for NPS's decision to provide its longtime incumbent contractors with an opportunity to match Eco Tour's proposal, which Eco Tour believed was clearly improper.

80.     NPS initially agreed to provide a pre-award debriefing.

81.     By letter dated July 29, 2013, NPS then subsequently refused to provide a pre-award debriefing to Eco Tour.  In that letter, NPS stated that "[g]iven the unique circumstances of this

award, we do not think a pre-award debriefing will satisfy your client since Eco Tour's Proposal

was evaluated as the best proposal for this opportunity."

82.     In denying Eco Tour a debriefing, defendants sought to further withhold information

which would demonstrate that their conduct was contrary to law.

83.     In that same letter dated July 29, 2013, NPS stated that is incumbent contractors had been

asked to and had amended their proposals to match the better terms and conditions of Eco Tour's

proposal.

84.     On August 1, 2013, Eco Tour brought an action in the U.S. Court of Federal Claims

challenging the defendants' illegal conduct.

85.     On November 26, 2013, the U.S. Court of Federal Claims ruled that defendants' conduct

was illegal, finding that:

> NPS violated applicable law, acted arbitrarily and capriciously, and abused its
> discretion in concluding that incumbent concessioners Jackson Hole Mountain
> Resort Corporation and The Hole Hiking Experience, Inc. submitted proposals
> that were "responsive" to the requirements of the prospectus and in allowing them
> to match the better terms of Eco Tour's proposals for the disputed contracts. . . .

*Eco Tour Adventures, LLC v. United States*, 114 Fed. Cl. at 11-12.

86.     In making this ruling, the U.S. Court of Federal Claims found that:

> The court agrees with Eco Tour that the NPS arbitrarily and capriciously determined that
> Jackson Hole and Hole Hiking had no start-up costs and that their failure to provide bank
> statements was immaterial.

20

*Id*. at 30.

The court agrees with Eco Tour that the NPS acted arbitrarily and capriciously in concluding that Jackson Hole's failure to provide a balance sheet and credit report was immaterial to an effective evaluation of Jackson Hole's history of meeting its financial obligations.

*Id.* at 31-32.

Here again, the court must agree with Eco Tour that the NPS failed to provide a rational basis for its determination that the errors and omissions in Hole Hiking's financial information were immaterial.

*Id*. at 33.

For the aforementioned reasons, the court concludes that each of the NPS's materiality determinations, as well as its resulting responsiveness determinations [benefitting its incumbent contractors], was arbitrary, capricious, and an abuse of discretion.

*Id*.

87.     This ruling by the U.S. Court of Federal Claims, which was not appealed by the

defendants, has *res judicata* effect.  *Novell, Inc. United States*, 109 F. Supp. 2d 22, 23-24

(D.D.C. 2000)(agreeing with the government that Court of Federal Claims decisions have res

judicata status, but dismissing case solely because, unlike the instant matter, it involved a

procurement).[1]

---

[1] To resolve the Court of Federal Claims proceeding, defendants offered to and did pay Eco Tour its proposal preparation costs.  However, Eco Tour informed defendants that it intended to pursue obtaining the contracts even if defendant offered to pay those costs, and defendants never required Eco Tour to waive its right to pursue award of the contracts through injunctive relief. Eco Tour warned defendants that their refusal to voluntarily award the contracts to Eco Tour could result in defendant paying Eco Tour's proposal preparation costs and Eco Tour obtaining the contracts themselves.  Defendants were not concerned about this outcome.

88.     After the Court of Federal Claims issued this ruling, Eco Tour engaged in extensive and lengthy efforts to persuade NPS to comply with the law.

89.     This effort included numerous visits to NPS's decision makers as well as efforts to engage the assistance of Wyoming's congressional delegation.

90.      The Wyoming congressional delegation was polite, but deferred from actively assisting Eco Tour even though NPS's actions were clearly illegal due to the fact that the two incumbent contractors were also Wyoming entities.

91.     As NPS was aware, Eco Tour had very limited funds or any future prospect of funds due to NPS's failure to award it the two contracts at issue.

92.     Eco Tour was unable to afford the expense of further litigation against the federal government, due in large part to the very illegal action at issue in this matter.

93.     Accordingly, Eco Tour exhausted all possible non-litigation methods to get NPS to follow the law.

94.     In the course of these efforts, NPS never provided Eco Tour with a substantive reason as to why NPS would not award the contracts at issue to Eco Tour pursuant to 36 C.F.R. § 51.31.

95.     Unfortunately, these efforts were unavailing.

96.     Without informing Eco Tour of its action, NPS awarded the contracts to JHMRC and Hole Hiking on July 16, 2014.

97.     Even though federal regulations clearly made it illegal for NPS to award the contracts to its incumbent contractors because those contractors had submitted non-responsive proposals, an NPS employee represented to Eco Tour that NPS was "going to do what it decided was best for Grand Teton National Park" regardless of the law.  NPS refused to provide any further explanation or justification for how it reached this conclusion.

98.     While not invoked by NPS, 36 C.F.R. § 51.20 does not excuse NPS's failure to comply with the explicit requirements of 36 C.F.R. § 51.31 in this situation by deciding not to award the contracts to Eco Tour so that it can instead award them to NPS's two longtime incumbent contractors.  There are no legitimate reasons for NPS to cast aside its concession regulations and detailed procedure so that it place these two contracts in the hands of its incumbent contractors.

99.     It is now apparent that NPS was determined to ensure that these two longtime incumbent contractors received the two contracts at issue, regardless of the applicable law.

100.    At the time NPS, JHMRC and Hole Hiking executed the contracts at issue, all of those parties were fully aware that the contracts were illegal and being awarded contrary to explicit federal regulations.

101.    The contracts issued to JHMRC and Hole Hiking are for a ten year term beginning on

November 1, 2014.


102.    Eco Tour, through this action, is seeking the benefit of the full ten year terms of both

contracts, to which it is entitled pursuant to the applicable federal regulations, beginning in the

winter season of 2015/2106.


**Count I**

103.    Eco Tour repeats and re-alleges the allegations in paragraphs 1-102 as if set forth fully

herein.


104.    NPS determined that Eco Tour submitted the best proposals for contract nos. CC-

GRTE024 and CC-GRTE032.


105.    As confirmed by the U.S. Court of Federal Claims in *Eco Tour Adventures, Inc. v. United

States*, 114 Fed. Cl. 6 (2013), JHMRC and Hole Hiking failed to provide responsive proposals

for contract nos. CC-GRTE024 and CC-GRTE032, and NPS's determination to the contrary was

not in accordance with law, arbitrary, capricious and an abuse of discretion.


106.    The regulations which NPS issued to implement the NPS Concessions Management

Improvement Act explicitly state that "[t]he Director <u>must</u> reject any proposal received,

regardless of the franchise fee offered, <u>if [] the proposal is not a responsive proposal as defined</u>

in [36 C.F.R. § 51.3]." 36 C.F.R. § 51.18 (emphasis added).  This regulation applied to any proposals received, including those by the incumbent contractors.

107.    Section 51.31 of Title 36 of the C.F.R. sets out exactly what must happen as a matter of law if a preferred offeror fails to submit a responsive proposal:

> **What happens if a preferred offeror does not submit a responsive proposal?**
>
> If a preferred offeror fails to submit a responsive proposal, the offeror may not exercise a right of preference.  The concession contract will be awarded to the offeror submitting the best responsive proposal.

36 C.F.R. § 51.31 (bold emphasis in original; underline emphasis added).

108.    The applicable federal regulations state that a preferred offeror does not have the right to match the best proposal if the preferred offeror has failed to provide a responsive proposal.

109.    The applicable federal regulations further state that, if a preferred offeror fails to submit a responsive proposal, the preferred offeror may not exercise a right of preference and the concession contract will be awarded to the offeror submitting the best responsive proposal.  36 C.F.R. § 51.31.

110.    Accordingly, NPS violated applicable law, acted in an arbitrary and capricious manner and abused its discretion when it violated 36 C.F.R. § 51.18 and 51.31 by awarding the contracts at issue to JHMRC and Hole Hiking when, as a matter of law, NPS was required to reject JHMRC's and Hole Hiking's non-responsive proposals.

## COUNT II

111.    Eco Tour repeats and re-alleges the allegations in paragraphs 1-110 as if set forth fully

herein.

112.    NPS determined that Eco Tour submitted the best proposals for contract nos. CC-

GRTE024 and CC-GRTE032.

113.    As confirmed by the U.S. Court of Federal Claims in *Eco Tour Adventures, Inc. v. United

States*, 114 Fed. Cl. 6 (2013), JHMRC and Hole Hiking failed to provide responsive proposals

for contract nos. CC-GRTE024 and CC-GRTE032, and NPS's determination to the contrary was

not in accordance with law, arbitrary, capricious and an abuse of discretion.

114.    Section 51.31 of Title 36 of the C.F.R. sets out exactly what must happen as a matter of

law if a preferred offeror fails to submit a responsive proposal:

> **What happens if a preferred offeror does not submit a responsive proposal?**
>
> If a preferred offeror fails to submit a responsive proposal, the offeror may not
> exercise a right of preference.  <u>The concession contract will be awarded to the
> offeror submitting the best responsive proposal.</u>

36 C.F.R. § 51.31 (bold emphasis in original; underline emphasis added).

115.    Therefore, NPS was explicitly mandated by law, pursuant to 36 C.F.R. § 51.31, to award

the concession contracts at issue to Eco Tour because, as NPS had determined, Eco Tour had

submitted the best responsive proposal.

116.    Accordingly, NPS violated applicable law, acted in an arbitrary and capricious manner

and abused its discretion when it failed comply with its legal mandate pursuant to 36 C.F.R. §

51.31 and award the contracts at issue to Eco Tour.

## PRAYER FOR RELIEF

WHEREFORE, Eco Tour respectfully requests that this Court:

(a)    issue an order confirming that, pursuant to *res judicata,* the decision of the U.S.

Court of Federal Claims in *Eco Tour Adventures, Inc. v. United States*, 114 Fed.

Cl. 6, 11-12 (2013), which held that

> NPS violated applicable law, acted arbitrarily and capriciously, and
> abused its discretion in concluding that incumbent concessioners
> Jackson Hole Mountain Resort Corporation and The Hole Hiking
> Experience, Inc. submitted proposals that were "responsive" to the
> requirements of the prospectus and in allowing them to match the
> better terms of Eco Tour's proposals for the disputed contracts. . . ,

is final and binding as to this issue;

(b)    issue an order declaring that NPS violated the law, acted arbitrarily and

capriciously, and abused its discretion in awarding the contracts at issue to

Jackson Hole Mountain Resort Corporation and The Hole Hiking Experience,

Inc.;

(c)    issue an order declaring that the contracts at issue are void as a matter of law;

(d)    issue an order declaring that NPS violated the law, acted arbitrarily and

capriciously, and abused its discretion by failing to award the contracts at issue to

Eco Tour;

27

(e)     issue an order declaring that Eco Tour has succeeded on the merits, will suffer

         irreparable harm if an injunction is not issued, the harm to plaintiff if an

         injunction is not issued outweighs the harm to the Government if an injunction is

         granted, and an injunction is in the public interest;

(f)     issue an injunction directing NPS to comply with its obligations under 36 C.F.R. §

         51.18 and 51.31 and other applicable federal law and award the contracts at issue

         to Eco Tour;

(g)     grant Eco Tour its costs and attorneys' fees incurred in pursuing this action; and

(h)     grant Eco Tour such further relief as this Court deems just and proper.


                                    Respectfully submitted,

                                     /s/ Kevin R. Garden
                                    Kevin R. Garden
                                    DC Bar No. 426745
                                    The Garden Law Firm, P.C.
                                    901 N. Pitt Street
                                    Suite 325
                                    Alexandria, VA 22314
                                    kevin@gardenlawfirm.com
                                    Tel.:  (703) 535-5565
                                    Fac.: (703) 997-1330


                                    Counsel for Plaintiff
                                    Eco Tour Adventures, Inc.

Dated:  December 22, 2014