**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ECO TOUR ADVENTURES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SALLY JEWELL, *in her official capacity as Secretary of the Interior*, *et al.*, <br><br> Defendants. | Civil Action No. 14-2178 (BAH) <br><br> Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Eco Tour Adventures, Inc. ("Eco Tour"), is a Wyoming-based small business that challenges, for the second time, the award by the National Park Service ("NPS") of two concession contracts to provide cross-country ski touring services in Grand Teton National Park ("the disputed contracts"). In its original challenge, which resulted in a judgment on the merits by the U.S. Court of Federal Claims ("CFC"), *Eco Tour Adventures, LLC v. United States* ("*Eco Tour I*"), 114 Fed. Cl. 6 (2013), Eco Tour was awarded $36,250 in monetary damages representing reimbursement of the costs it incurred in submitting its bid for the disputed contracts, Judgment, *Eco Tour I*, No. 13-cv-532-LJB (Fed. Cl. April 17, 2014), ECF No. 60.[1] After these contracts were subsequently awarded to its competitors, Eco Tour now seeks, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 *et seq.*, declaratory and injunctive relief rescinding the awarded contracts and requiring the NPS to award the contracts instead to Eco Tour, Compl. at 27–28 ("Prayer for Relief"), ECF No. 1. Pending before the Court is the defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure

---

[1] In 1992, the United States Claims Court was renamed the United States Court of Federal Claims, *see* Federal Courts Administration Act of 1992, Pub. L. No. 102–572, § 902, 106 Stat. 4506, 4519, which is referred to herein as the "Court of Federal Claims" or "CFC."

12(b)(1) and 12(b)(6).  Defs.' Mot. Dismiss Compl. ("Defs.' Mot."), ECF No. 12.  For the

reasons outlined below, the defendants' motion is denied.

## I.    BACKGROUND

The factual background underlying the plaintiff's present challenge is described in detail

in the decision issued by the CFC resolving Eco Tour's earlier claim arising out of its

unsuccessful bids to obtain the disputed contracts.  *Eco Tour I*, 114 Fed. Cl. at 12–18.

Consequently, the relevant factual and procedural history underlying the pending motion is

summarized only briefly below.

As an element of its responsibility over the nation's national parks, the NPS is authorized

to "grant privileges, leases, and permits for the use of land for the accommodation of visitors in

the various parks, monuments, or other reservations."  *Id.* at 12 (citing Act of Aug. 25, 1916, ch.

408, Pub. L. No. 64–235, § 3, 39 Stat. 535, 535; *Circle Line–Statue of Liberty Ferry, Inc. v.*

*United States,* 76 Fed. Cl. 490, 491 (2007)).  Pursuant to this authority, in December 2012, the

NPS issued a prospectus soliciting proposals for three ten-year concession contracts to provide

guided cross-country ski touring services in Grand Teton National Park.  *Id.* ¶¶ 20–21.  At the

time of this solicitation, these services were being provided by three incumbent concessioners,

each of which the NPS designated as a "preferred offeror," which designation the plaintiff does

not contest.  *Eco Tour I*, 114 Fed. Cl. at 14.  Under applicable NPS regulations, this designation

allowed these companies to exercise a "right of preference" allowing them to match any better

offer from a new bidder so long as they submitted a "responsive proposal . . . which satisfied the

minimum requirements established by the [NPS]."  *Eco Tour I*, 114 Fed. Cl. at 12–13.

Eco Tour has provided guided tours in Grand Teton since 2008, Compl. ¶ 17, and

submitted proposals for two of these concession contracts, *Eco Tour I*, 114 Fed. Cl. at 16.  An

evaluation panel determined that Eco Tour submitted the best proposal for both contracts, but found that the incumbent concessioners each submitted proposals "responsive to the minimum requirements of the [p]rospectus," and afforded these contractors an opportunity to match certain terms of Eco Tour's proposals deemed to be "elements of a better offer." *Id.* The incumbents thereafter timely exercised their right of preference on June 20, 2013, by agreeing to match the terms of Eco Tour's proposals and supplement their initial proposals with additional financial information missing from their original submissions. *Id.* at 18. On September 4, 2013, the NPS determined that the disputed contracts should be awarded to the incumbent concessioners. *Id.*

In the interim, Eco Tour filed its initial bid protest in the CFC on August 1, 2013. *Id.* Contending that the incumbent concessioners' failure to include financial information required by the prospectus rendered their proposals unresponsive, Eco Tour claimed that the NPS acted arbitrarily and capriciously, and breached its implied contractual obligation to consider bids fairly and honestly, by allowing the incumbents to match the terms proposed in the Eco Tour bids. *Id.* at 23. In addition to injunctive and declaratory relief, Eco Tour sought reimbursement for the costs it incurred in preparing its bids for the disputed contracts, as well as attorneys' fees and litigation costs. *Id.* at 19.[2] The court agreed with Eco Tour, and held that the NPS acted arbitrarily and capriciously in concluding that the financial information excluded from the incumbent concessioners' proposals was immaterial to the agency's selection of the strongest bids. *Id.* at 42. Since these proposals were, therefore, not responsive to the requirements of the prospectus, the CFC further held that the NPS breached its duty to fairly and honestly consider

---

[2] The plaintiff also asserted a claim, pursuant to the Procurement Integrity Act, 41 U.S.C. §§ 2101–2107, which the CFC dismissed on the merits, *Eco Tour I*, 114 Fed. Cl. at 35–37, and has not been realleged in the present action, *see generally* Compl.

the plaintiff's bids by improperly allowing the incumbents to match the terms proposed by Eco Tour.  *Id.* at 42–43.

While finding that Eco Tour's bids were unfairly considered, the CFC concluded that the equitable and declaratory relief Eco Tour requested could not be awarded since the court lacked jurisdiction to provide such relief.  *Id.* at 21, 42.  In particular, because the disputed concessions contracts were not "procurement contracts" for purposes of the Tucker Act, 28 U.S.C. § 1491, *id.* at 21, the court held that Eco Tour was entitled to recover only the costs the company incurred in preparing and submitting its bids for the disputed contracts, *id.* at 42–43.  Since the exact amount of such costs was undetermined, the court directed the parties to confer "to determine how they wish[ed] to proceed with respect to determining the amount of bid preparation costs Eco Tour is entitled to receive in light of the court's resolution of [Eco Tour's] protest."  *Id.* at 43.

Unable to come to a resolution regarding the precise amount of preparation costs owed to the plaintiff, the parties requested, and the court granted, an opportunity to brief the issue.  *See* Scheduling Order, *Eco Tour I*, No. 13-cv-532-LJB (Fed. Cl. Feb. 10, 2014), ECF No. 53. Thereafter, however, the parties jointly agreed and stipulated that Eco Tour should be awarded $36,250 in preparation costs stemming from its unsuccessful bids for the disputed contracts and requested entry of judgment to that effect.  Joint Stipulation Re: Money Damages Owed Under December 12, 2013 Opinion & Order & Joint Request For Entry of Judgment, *Eco Tour I*, No. 13-cv-532-LJB (Fed. Cl. April 15, 2014), ECF No. 58.  The court granted this joint request and entered judgment in favor of Eco Tour, awarding $36,250 in bid preparation costs, on April 17, 2014.  Judgment, *Eco Tour I*, No. 13-cv-532-LJB (Fed. Cl. April 17, 2014).  Following entry of judgment on Eco Tour's claim, the NPS awarded the disputed contracts to the incumbent concessioners on July 16, 2014.  Compl. ¶ 96.

Approximately six months later, the plaintiff filed the instant action on December 22, 2014.  Reasserting its claim that the NPS violated applicable statutes and regulations in awarding the disputed contracts to the incumbent concessioners, Eco Tour contends that the "illegality of NPS's conduct has already been determined by the [CFC]" and the NPS was therefore "required by law to reject [the incumbent concessioners'] proposals . . . [and] award the contracts to Eco Tour because NPS had evaluated Eco Tour's proposal as the best among all proposals received." Compl. ¶ 1.  According to Eco Tour, following resolution of its claim in the CFC, the NPS took advantage of that court's "lack of authority to provide full relief" to the plaintiff and "proceeded to award the two [concession] contracts to its long-time incumbent contractors in violation of the law." *Id.* ¶ 2.

Recognizing its inability to bar the award of the disputed contracts to the incumbent concessioners in the CFC, the plaintiff brought the present action in this Court, under the APA, seeking injunctive and declaratory relief. *Id.* ¶¶ 3, 6.  Specifically, Eco Tour seeks "an order . . . declaring that the two contracts awarded to NPS's longtime incumbent contractors are illegal and thus void[, as well as] an injunction requiring the defendants to . . . award the two contracts to Eco Tour for their full 10-year terms, beginning in the 2015/2016 winter season." *Id.* ¶ 4.  The defendants have now moved to dismiss the plaintiff's Complaint in its entirety for lack of standing, pursuant to Federal Rule of Civil Procedure 12(b)(1), and, alternatively, for failing to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defs.' Mot.

## II.    LEGAL STANDARD

### A.    Dismissal for Lack of Standing Under Federal Rule of Civil Procedure 12(b)(1)

In evaluating a motion to dismiss for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), federal courts must be mindful that they "are courts of limited

jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton,* 133 S.Ct. 1059, 1064 (2013) (internal quotation marks omitted) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC,* 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, "have an affirmative obligation to consider whether the constitutional and statutory authority exist for us to hear each dispute," *James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1092 (D.C. Cir. 1996) (internal quotation marks omitted) (quoting *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506 (2006); FED. R. CIV. P. 12(h)(3).

Article III of the Constitution restricts the power of federal courts to hear only "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1; *see Mendoza v. Perez,* 754 F.3d 1002, 1010 (D.C. Cir. 2014) ("Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies between proper litigants." (internal quotation marks omitted) (quoting *Fla. Audubon Soc'y v. Bentsen,* 94 F.3d 658, 661 (D.C. Cir. 1996))). "The doctrine of standing gives meaning to these constitutional limits by identify[ing] those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus,* 134 S.Ct. 2334, 2341 (2014) (alteration in original) (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)). Absent standing by the plaintiff, the court lacks subject matter jurisdiction to hear the claim and dismissal is mandatory. *See* FED. R. CIV. P. 12(h)(3).

Where the plaintiff's standing is challenged, the court "must assume that [the plaintiff] states a valid legal claim." *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.,* 338 F.3d 1024, 1029 (D.C. Cir. 2003). In such cases, the plaintiff bears the burden of "show[ing] a

substantial probability that [he or she has] been injured, that the defendant caused [his or her] injury, and that the court could redress that injury." *Carbon Sequestration Council v. E.P.A.*, 787 F.3d 1129, 1133 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *Sierra Club v. EPA,* 292 F.3d 895, 899 (D.C. Cir. 2002)); *see also Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008). "'Each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) *cert. denied,* 136 S. Ct. 900 (2016) (internal alterations omitted) (quoting *Lujan,* 504 U.S. at 561). Thus, where the plaintiff's standing is challenged under Rule 12(b)(1), the court must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Mendoza*, 754 F.3d at 1010. In addition, to assure itself of its jurisdiction over a claim, "the district court may consider materials outside the pleadings." *Jerome Stevens Pharm., Inc. v. FDA,* 402 F.3d 1249, 1253 (D.C. Cir. 2005); *see also Belhas v. Ya'Alon,* 515 F.3d 1279, 1281 (D.C. Cir. 2008) (examining materials outside the pleadings in ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction).

**B.      Dismissal for Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555, and "nudge[] [the] claims across the line from conceivable to plausible," *id*. at 570.  Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact.  *Twombly* at 555; *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014), *cert. denied sub nom. Sissel v. Dep't of Health & Human Servs.*, 136 S. Ct. 925 (2016) (in considering a Rule 12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct" (internal citations omitted)).  In addition, courts may "ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

## III.   DISCUSSION

The defendants assert two alternative grounds for dismissing the plaintiff's claims.  First, the defendants contend that, in agreeing to accept reimbursement of its bid preparation costs in

connection with the judgment it received in the CFC, Eco Tour now lacks standing to challenge the award of the disputed contracts to the incumbent concessioners. Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") at 1–2, EFC No. 12. Alternatively, the defendants contend that, even if Eco Tour has standing to pursue its claim for injunctive and declaratory relief, this claim is precluded under the doctrine of election of remedies because it has already accepted reimbursement for bid preparation costs in connection with its earlier claim against the defendants. *Id.* at 2. Thus, in large measure, the present motion centers on the degree to which Eco Tour's decision, in connection with the judgment it received in the CFC, to accept reimbursement of the costs it incurred in preparing its bids for the disputed contracts precludes this Court from granting the injunctive and declaratory relief the plaintiff now seeks.

Following a summary of the relevant statutory and legal framework governing the resolution of challenges to federal contracting actions, the defendants' arguments that Eco Tour lacks standing to pursue its present claim, and is further precluded from seeking equitable relief after electing to receive a damages award, are each considered *seriatim.*

## A.    Statutory and Legal Framework

"The history of judicial review of government contracting procurement decisions is both long and complicated." *Emery Worldwide Airlines, Inc. v. United States* ("*Emery*"), 264 F.3d 1071, 1078 (Fed. Cir. 2001).[3] Historically, disappointed bidders seeking to challenge a federal contracting action could bring an action in either the CFC or a federal district court, with the timing of a particular challenge largely dictating the selected venue and the relief available to successful plaintiffs. Following passage of the Administrative Dispute Resolution Act of 1996

---

[3]       The summary that follows draws largely on the Federal Circuit's more comprehensive overview of historical developments in the review of federal contracting decisions in *Emery*, 264 F.3d at 1078–80. *See also Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1331–32 (Fed. Cir. 2001).

("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870, however, this Court's continued jurisdiction over such challenges has been questioned, as discussed in more detail below.

The CFC has long reviewed bid challenges as an element of its authority under the Tucker Act, which provides the CFC with jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a). This longstanding jurisdiction to review bid challenges is "premised on the theory that when the government invites bids or solicits proposals from the public, it enters into an 'implied-in-fact' contract to consider those bids or proposals fairly." *Eco Tour I*, 114 Fed. Cl. at 21 (collecting cases); *see also Emery*, 264 F.3d at 1078 (explaining that this limited jurisdiction arose after the Supreme Court initially determined, in *Perkins v. Lukens Steel Co.,* 310 U.S. 113 (1940), that disappointed potential contractors lacked standing to challenge federal contracting decisions in federal courts). Thus, plaintiffs alleging that their bids were not fairly considered by a contracting agency could, under § 1491(a), pursue a breach-of-contract claim against the agency. *Eco Tour I*, 114 Fed. Cl. at 21.

Though disappointed bidders were thus able to obtain review of federal contracting decisions, success before the CFC generally entitled a prevailing plaintiff to only limited relief. In particular, "[e]xcept in narrow statutorily defined circumstances, the [CFC] lacks jurisdiction to award injunctive or declaratory relief." *Eco Tour I*, 114 Fed. Cl. at 40. Thus, historically, review of contracting decisions in the CFC "was narrow and an aggrieved party was typically limited to monetary relief." *Emery*, 264 F.3d at 1078 (citing *Impresa Construzioni Geom. Domenico Garufi v. United States* ("*Impresa*"), 238 F.3d 1324, 1331 (Fed. Cir. 2001). In 1982, however, Congress expanded the authority of the CFC to provide declaratory and injunctive relief "on any contract claim brought before the contract [was] awarded." *See* Federal Courts

Improvement Act of 1982 ("FCIA"), Pub. L. No. 970-164, § 133(a)(3), 96 Stat. 25, 39. Nonetheless, because this expanded relief under § 1491(a) was available only in pre-award challenges, the CFC lacked authority to grant equitable or declaratory relief after a contract was awarded. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983).

Apart from obtaining relief in the CFC, however, disappointed bidders could for decades pursue a claim in federal district court under the judicial review provisions of the APA. 5 U.S.C. § 702 (providing that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof"). In this Circuit, this authority derived from *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C. Cir. 1970), in which the D.C. Circuit held that unsuccessful bidders maintained standing under the APA to challenge allegedly invalid government contracting decisions. Under this "*Scanwell* jurisdiction," disappointed bidders were permitted to "challenge a government contract award under the [APA,] which empowers courts to set aside any agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Iceland S.S. Co. v. U.S. Dep't of Army*, 201 F.3d 451, 453 (D.C. Cir. 2000).

Like a plaintiff bringing a claim in the CFC, however, plaintiffs pursuing an APA claim in a federal district court to challenge a federal contracting action could obtain only narrow relief. In particular, in this jurisdiction, review under the APA was available only for post-award challenges, *Labat-Anderson, Inc. v. United States*, 346 F. Supp. 2d 145, 149–50 (D.D.C. 2004) (noting disagreement among the circuits regarding whether APA review was available for pre-award challenges); *see also Am. Fed'n of Gov't Employees, AFL-CIO v. United States*, 46 Fed.

Cl. 586, 593 (2000), with successful plaintiffs eligible for only injunctive and declaratory remedies, *see* 5 U.S.C. § 702.

Recognizing various difficulties presented by this parallel, though largely distinct, jurisdiction, Congress passed the ADRA to amend the Tucker Act and "give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to review in the federal district courts and the Court of Federal Claims." *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1246 (Fed. Cir. 2010) (emphasis omitted) (quoting H.R. Rep. No. 104-841, at 10 (1996) (Conf. Rep.)).  To do so, Congress initially provided concurrent jurisdiction over such challenges to both the CFC and the federal district courts.  Specifically, Congress added a new subsection (b) to the Tucker Act, which reads in relevant part:

> Both the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).  In such cases, Congress authorized courts to "award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs."  28 U.S.C. § 1491(b)(2).  After five years, however, the statute's sunset provision terminated district courts' jurisdiction over such actions on January 1, 2001.  *See* Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(d), 110 Stat. 3870, 3874; *see also Pub. Warehousing Co. K.S.C. v. Def. Supply Ctr. Philadelphia*, 489 F. Supp. 2d 30, 37 (D.D.C. 2007) (explaining that Congress declined to extend this sunset date).

While the ADRA thus made clear that the CFC (and, at least temporarily, federal district courts) may grant all manner of relief for bid challenges arising out of government procurement

12

actions, the statute effectively restricted the authority of the CFC in non-procurement actions (*e.g.*, concession actions) by repealing the authority to award equitable relief previously provided in 1982 under the FCIA. *Eco Tour I*, 114 Fed. Cl. at 41. Thus, the CFC's traditional "implied-in-fact jurisdiction over nonprocurement solicitations survived" enactment of the ADRA, *Res. Conservation Grp.*, 597 F.3d at 1246, but limited any award available to monetary relief in such cases, *Eco Tour I*, 114 Fed. Cl. at 41. As a result, following passage of the ADRA, the CFC maintains authority to hear challenges to both federal procurement decisions as well as non-procurement solicitations. *Res. Conservation Grp.*, 597 F.3d at 1246. For successful challenges to procurement decisions, that court may award any proper remedy, including declaratory and injunctive relief as well as reimbursement of bid preparation and proposal costs. 28 U.S.C. § 1491(b)(3). For non-procurement claims, such as the challenge to the concession contracting process at issue here, the CFC may award only monetary damages. *Eco Tour I*, 114 Fed. Cl. at 41–42.

While the district courts' *Scanwell* jurisdiction to review federal contracting decisions under the APA was widely accepted prior to adoption of the ADRA, *see Nat'l Fed'n of Fed. Employees v. Cheney*, 883 F.2d 1038, 1052 & n.29 (D.C. Cir. 1989) (collecting cases from eight circuits), courts are divided as to whether district courts retain any of this jurisdiction following the sunset date of the ADRA provision expressly authorizing district court jurisdiction over such claims.[4] The D.C. Circuit had not had occasion to consider directly the extent, if any, to which district courts currently have jurisdiction under the APA to review bid protests to either procurement or nonprocurement government contracts. *See Iceland S.S. Co.*, 201 F.3d at 451

---

[4]     Portions of the legislative history accompanying enactment of the ADRA addressed the viability of *Scanwell* jurisdiction following the sunset of district court jurisdiction under § 1491(b) and suggest that members of Congress disagreed as to the effect of the sunset provision. *See* Peter Verchinski, Note, *Are District Courts Still A Viable Forum for Bid Protests?*, 32 Pub. Cont. L.J. 393, 400–403 (2003).

(considering an APA challenge under *Scanwell* prior to the sunset date set out in the ADRA). Judges on this Court have concluded that the ADRA broadly precludes district court jurisdiction over at least some bid protests under the APA. *See, e.g., Pub. Warehousing Co.*, 489 F. Supp. 2d at 37 & n.6 ("Congress intended to eliminate the *Scanwell* jurisdiction of the district courts and channel all procurement protests into the Court of Federal Claims when it enacted the ADRA."); *Labat-Anderson, Inc.*, 346 F. Supp. 2d at 153 ("In truth, the only proposition that is clear from the legislative history of the statute is that the sponsors intended the ADRA to overrule the D.C. Circuit's decision in *Scanwell*."); *Novell, Inc. v. United States*, 109 F. Supp. 2d 22, 24 (D.D.C. 2000) ("[T]here no longer is such an independent, APA-based jurisdiction for the district courts in government bid protest cases; rather, Congress effectively subsumed APA jurisdiction of the district courts into the more specific jurisdictional language of ADRA."); *see also Vero Tech. Support, Inc. v. U.S. Dep't of Def.*, 437 F. App'x 766, 768 (11th Cir. 2011) ("[I]t is clear that Congress's intent in enacting the ADRA with the sunset provision was to vest a single judicial tribunal with exclusive jurisdiction to review government contract protest actions. Accordingly, the [CFC] now enjoys exclusive jurisdiction over Tucker Act claims." (internal quotations and citation omitted)).

Nonetheless, while acknowledging that the post-sunset effect of the ADRA was to repeal the express grant of district court jurisdiction over procurement actions, the Federal Circuit has indicated that the ADRA does not affect the district court's jurisdiction in the non-procurement context. *Res. Conservation Grp., LLC*, 597 F.3d at 1246. Thus, in addition to pursuing an action for damages in the CFC, the Federal Circuit has observed that "a disappointed bidder in a nonprocurement case could also theoretically bring its bid protest challenge in a federal district court, since the ADRA only repealed jurisdiction over procurement cases." *Id.* at 1246 n.12; *see*

*also* Compl. ¶ 7 (arguing that "the repeal of district court jurisdiction in the [ADRA] over any action related to a procurement contract award determination did not eliminate the district courts' longstanding jurisdiction over government actions related to the award of contracts which do not involve procurements" (citing *Res. Conservation Grp., LLC*, 597 F.3d at 1245)).

In this case, the defendants do not contest the CFC's determination that the disputed contracts do not qualify as procurements within the meaning of the ADRA, nor do the defendants suggest that this Court lacks jurisdiction under the APA over Eco Tour's present non-procurement challenge. *See* Defs.' Mem at 11 n.3 (noting, without contesting, Eco Tour's assertion "that this Court has jurisdiction under the APA to hear claims concerning the award of contracts that do not involve procurements"); *see generally* Defs.' Reply Supp. Defs.' Mot. Dismiss ("Defs.' Reply"), ECF No. 16.  Instead, the defendants contend that, having chosen to pursue its claim first in the CFC, which granted reimbursement of its bid preparation costs under the Tucker Act, Eco Tour is now precluded from renewing its claim in this Court under the APA.

### B.    The Plaintiff Has Standing to Pursue its Request for Declaratory and Injunctive Relief

The defendants first argue that Eco Tour, having accepted judgment on its claim for reimbursement of the costs incurred in preparing its unsuccessful bids for the disputed contracts, now lacks standing to pursue its present claim for injunctive and declaratory relief under the APA in this Court.  Defs.' Mem. at 8–10.  According the defendants, Eco Tour has already been reimbursed for its bid preparation costs and, therefore, "its injury has been redressed and it lacks standing to bring a post-award bid protest claim in the District Court based on the same conduct."  Defs.' Reply at 4.

As the D.C. Circuit has explained, an APA challenge to a federal contracting decision rests not merely on the lost economic gain the disappointed bidder would have received had it

been awarded the contract, but stems instead from an "injury to [the bidder's] right to a legally

valid procurement process." *Nat'l Mar. Union of Am., AFL-CIO v. Commander, Military Sealift

Command,* 824 F.2d 1228, 1237 (D.C. Cir. 1987) (citing authorities); *see also id.* ("[R]eference

to the bidder's distinctive legal right [to fair consideration] is essential to article III standing in a

procurement challenge.").  Like the implied-in-fact contract giving rise to a damages action

under the Tucker Act, this right to fair consideration "is implicitly bestowed on all bidders by the

mandatory language of the federal procurement statutes, and by the contractual invitation to bid

embodied in the solicitation."  *Id.* (internal citations omitted).  Thus, under Article III, "'injury to

a bidder's right to a fair procurement is obviously an injury both traceable to the alleged

illegality in a procurement and redressable by any remedy that eliminates the alleged illegality.'"

*LTMC/Dragonfly, Inc. v. Metro. Washington Airports Auth.*, 699 F. Supp. 2d 281, 291 (D.D.C.

2010) (quoting *Nat'l Mar. Union of Am.,* 824 F.2d 1237–1238).

    At the same time, however, not every unsuccessful bidder maintains standing to

challenge the final contracting decision.  In particular, in order to challenge an individual federal

contracting decision, the plaintiff must demonstrate that its bid application "was within the zone

of active consideration" by the defendant agency.  *Free Air Corp. v. FCC,* 130 F.3d 447, 450

(D.C. Cir. 1997) ("In other words, sufficiently viable runners-up in a procurement process have

standing to allege that an illegality in the process caused the contract to go to someone else and

not to them.").  This means that a contractor unable to demonstrate that, but-for the alleged

illegality in the contracting decision, it would have been awarded the disputed contract, may not

bring a challenge in this Court.  *See*, *e.g.*, *Cheeks of N. Am., Inc. v. Fort Myer Const. Corp.*, 807

F. Supp. 2d 77, 94 (D.D.C. 2011) *aff'd*, No. 11-7117, 2012 WL 3068449 (D.C. Cir. July 26,

2012) (finding, in related context, that the plaintiff lacked standing to challenge a contracting

decision allegedly influenced by illegal bid-rigging where the plaintiff's rejected bid was deemed non-responsive).  Thus, to determine whether Eco Tour has standing to pursue its present claim for injunctive and declaratory relief, the Court must consider whether, having accepted reimbursement of bid preparation costs in its original action before the CFC, Eco Tours may continue to stand as a "viable runner[]-up" in the challenged NPS solicitation process.  *Free Air Corp.,* 130 F.3d at 450.

According to the defendants, Eco Tour's decision to receive reimbursement of its bid preparation costs "placed it in the position as if it never bid in the first instance," Defs.' Mem. at 8, and, consequently, Eco Tour cannot demonstrate that it has suffered an injury sufficient to confer standing to pursue its present claim, *id.* at 9–10.  As noted, the defendants posit that by granting the Eco Tour's request for monetary damages, the CFC fairly and fully redressed any injury Eco Tour suffered in connection with the award of the disputed contracts.  *Id.* at 10.  The defendants therefore contend that Eco Tours now lacks the requisite injury-in-fact to assert standing to pursue its claim in this Court.

In response, Eco Tour seeks to distinguish its "pre-award" claim for monetary damages from its present "post-award" claim for equitable and declaratory relief.  Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 6, 12, 16–17, ECF No. 14.[5]  Specifically, Eco Tours contends that recovery of its bid preparation costs in its initial action before the CFC, based on that court's implied-in-fact jurisdiction, is distinct from its present request, under the APA, to prevent the NPS from awarding the disputed contracts to its competitors and require the contracts to be awarded to Eco Tours.  *Id.* at 12.  Relying on this distinction, Eco Tours contends that its

---

[5]      The defendants also refer to Eco Tour's initial claim before the CFC as a "pre-award" challenge, *see*, *e.g.*, Defs.' Mem. at 8, and clarify that "an award decision had been made at the time of Eco Tour's lawsuit but had not been finalized," Defs.' Reply Supp. Defs.' Mot. Dismiss at 4 n.1, ECF No. 16.

stipulation and request for judgment on its claim for reimbursement of bid preparation costs did not include a waiver of future claims for injunctive relief, which form of additional relief was reserved during the course of negotiations with the defendants. *Id.* at 13–17.

As an initial matter, the defendants' suggestion that, "[h]aving elected and received reimbursement for those costs, Eco Tour is now essentially in the same position of a non-bidder," Defs.' Mem. at 8, misconstrues the nature of the relief Eco Tour received in its original action before the CFC. In fact, reimbursement of bid preparation costs for a plaintiff that prevails on an implied-contract theory under § 1491(a) is not intended to place the disappointed bidder in the position it would have been in had it not submitted a bid in the first instance. *AT&T Techs., Inc. v. United States*, 18 Cl. Ct. 315, 320 (1989) (explaining that placing the plaintiff in the position of a non-bidder is "not the standard of recovery" in awarding bid preparation costs). Instead, "bid preparation and proposal costs are a subset, not the entirety, of the costs a contractor may choose to invest to compete for the award of a government contract, [which may include] costs incurred to prepare for contract performance [in addition to] costs incurred to prepare a bid for submission." *Innovation Dev. Enterprises of Am., Inc. v. United States*, 114 Fed. Cl. 213, 219–20 (2014) *aff'd*, 600 F. App'x 743 (Fed. Cir. 2015). Properly understood, then, Eco Tour's recovery of bid preparation costs under the final judgment of the CFC did not have the effect of placing Eco Tour in the position of a "non-bidder." Instead, reimbursement of these costs are intended to reflect only a portion of the potential costs Eco Tour incurred in submitting its bid for the contested contracts.

Beyond this initial confusion, however, the defendants offer little support for its suggestion that Eco Tour has suffered no injury-in-fact conferring standing to pursue its instant APA claim. The defendants concede that Eco Tour submitted bids for the disputed contracts and

that these bids were determined by the agency to be the best proposals submitted for each contract. Defs.' Mem. at 3. Further, the defendants acknowledge that the contracts were awarded to Eco Tour's competitors only after the NPS allowed the incumbent concessioners to match the terms of Eco Tour's proposals and construed the incumbents' proposals as responsive, which the plaintiff alleges was in violation of applicable statutes and regulations. *Id.* Thus, the defendants offer nothing to suggest that Eco Tour's proposals were outside the NPS's "zone of active consideration," *Free Air Corp.,* 130 F.3d at 450, or that the plaintiff fails to qualify as a "viable runner[]-up" for the disputed contracts, *id.*

Nonetheless, even assuming the plaintiff has suffered an injury giving rise to standing, the defendants suggest that the plaintiff lacks standing because, should it prevail on the merits of its claim, the Court is powerless to grant relief that would redress the plaintiff's asserted injury. Defs.' Reply at 5. Thus, the defendants argue that, because the agency ultimately maintains discretion over whether or not to enter into the disputed contracts at all, the Court "cannot compel" the NPS to award these contracts to the plaintiff. *Id.* To a degree, the defendants are correct that dissolution and reformation of government contracts is generally outside the purview of the federal courts. Indeed, the *Scanwell* Court itself noted the "undisputable" proposition "that the ultimate grant of a contract must be left to the discretion of a government agency[, and therefore] the courts will not make contracts for the parties." 424 F.2d at 869; *see also id.* at 864 ("[T]here is no right in [the plaintiff-bidder] to have the contract awarded to it in the event the district court finds illegality in the award of the contract . . . .").

More recently, however, the D.C. Circuit has held that district courts may, in certain limited situations, issue an order compelling an agency to award a contract to an aggrieved bidder. In particular, the Circuit has clarified that "the main objective of our effort at framing a

remedy [in a case arising under *Scanwell*] is to assure that the government obtains the most advantageous contracts by complying with the procedures which Congress and applicable regulations have provided." *Delta Data Sys. Corp. v. Webster* ("*Delta Data*"), 744 F.2d 197, 206 (D.C. Cir. 1984).  To do so, "[p]utting the disappointed bidder in the economic position it would have occupied but for the error is normally the best approach" to resolving such a dispute.  *Id.* at 206–07.  Where doing so "is impracticable, however, or can only be achieved at a cost to the government that will greatly exceed the benefits derived from requiring observance of the proper procedures in the particular case, [the court] must seek a more reasonable alternative." *Id.* at 207.

Under this standard, courts will not make contracts for agencies, "unless it is clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order the award." *Delta Data,* 744 F.2d at 204; *see also LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Abraham* ("*LeBoeuf*"), 347 F.3d 315, 320 (D.C. Cir. 2003) (same, quoting *Delta Data*).  By contrast, "'[w]here there is nothing in the record to guarantee that the plaintiff would have received the contracts [absent an alleged breach of applicable contracting procedures], there are no grounds to vacate the awards of [the] contracts to other contractors and grant them to the plaintiff.'" *Delta Data,* 744 F.2d at 204 (internal alterations omitted) (quoting *Old Dominion Dairy Products, Inc. v. Secretary of Defense,* 631 F.2d 953, 969 (D.C. Cir. 1980)). Consequently, a "disappointed bidder seeking to overturn the agency's decision must show either that the agency's decision lacked a rational basis or that the 'procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.'" *LeBoeuf*, 347 F.3d at 320 (quoting *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C. Cir. 1973)).

20

While the Court need not resolve the issue entirely at this early stage, the fact that the NPS awarded the disputed contracts to the incumbent concessioners only after the resolution of the earlier proceedings before the CFC suggests that, but for the alleged illegality in the consideration of these contractors' proposals, the plaintiff would have been awarded each of these contracts.  *Accord Eco Tour I*, 114 Fed. Cl. at 34 (explaining that, "in accordance with the [NPS's] regulations, there is a substantial chance that Eco Tour would have been awarded the disputed contracts if not for the errors alleged in the amended complaint"); *see also LeBoeuf*, 347 F.3d at 325 (remanding the disappointed contractors' request for an injunction awarding the balance of a ten-year contract for legal services where evidence in the record indicated that the agency had a continuing need for such services).  As such, the plaintiff has met its burden of alleging a legally cognizable harm caused by the defendants' alleged actions that, should the Court find in the plaintiff's favor, may be redressed by an order providing the declaratory and injunctive relief the plaintiff seeks.

Accordingly, the defendants' request to dismiss the present action for lack of standing is denied.

### C.    Receipt of Bid Preparation Costs Before the Court of Federal Claims Does Not Preclude Equitable and Declaratory Relief in This Court

Since Eco Tour has established standing to pursue its present claim against the defendants, the Court next must consider whether the equitable and declaratory relief the plaintiff seeks is otherwise precluded by the judgment the plaintiff has already received from the CFC. According to the defendants, having voluntarily elected to receive reimbursement of its bid preparation costs in resolving its earlier claim, Eco Tour may not now seek *additional* remedies "for the same legal injury."  Defs.' Mem. at 10.

Specifically, the defendants assert that the plaintiff's claim is barred under the so-called "doctrine of election of remedies." *Id.* Often intertwined with notions of claim preclusion, "[a] confusing congeries of doctrines have been lumped together under the election-of-remedies label." 18B CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 4476 (2d ed. 1995). "If there is any common thread at all to lace these doctrines together, it is that an election will be found only if a party has chosen to pursue one position that is inconsistent with another possible position, with full knowledge of the circumstances that make both theories available and inconsistent." *Id.*; *see also* 25 AM. JUR. 2d *Election of Remedies* § 3 ("The purpose of the doctrine of election of remedies is not to prevent recourse to any remedy, or to alternative remedies, but to prevent double recoveries or redress for a single wrong."). The election-of-remedies doctrine "is 'a harsh doctrine not favored in jurisprudence and not to be unduly extended.'" *Quinn v. DiGiulian*, 739 F.2d 637, 64 (D.C. Cir. 1984) (quoting *Cook Plumbing & Heating, Inc. v. Frank Briscoe Co.,* 445 F.2d 1177, 1179 (10th Cir. 1971)). As the D.C. Circuit has explained, where appropriate, the doctrine embodies a principle of estoppel:

> One who, with full knowledge of facts upon which inconsistent claims for relief may be predicated, requires his adversary to defend against a version of the facts marshalled in support of one theory, cannot in good conscience subsequently pursue a claim resting upon repugnant factual or legal bases. If, on the other hand, two causes of action that are not inconsistent arise from a single course of events, the doctrine of election of remedies does not require that a plaintiff, by choosing to assert one cause of action, be precluded from asserting the other.

*Id.* (quoting 1B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.405[7] (2d ed. 1983)). Consequently, absent apparent inconsistency between two successive claims, "election of remedies doctrine has no application." *Id.*

The D.C. Circuit's holding in *Quinn v. DiGiulian*, is instructive. There, the plaintiff sued his union and two of its officers, under the Labor Management Reporting and Disclosure Act

(LMRDA), 29 U.S.C. § 411, alleging that he was targeted for harassment and termination after he declared his intention to run against an incumbent for a management position in the union. *Quinn*, 739 F.2d at 638–39.  Before bringing his claim in the district court, the plaintiff "litigated and won essentially the same claim before the [National Labor Relations Board ("NLRB")], and had been awarded backpay, a cease-and-desist order and posting of notices." *Id.* at 642.  After a jury verdict in favor of the plaintiff, the district court awarded him more than $40,000 in additional compensatory and punitive damages.  *Id.* at 641.  Challenging this later damages award, the defendants argued that "assuming that [the plaintiff] could have chosen originally to bring his claim to either the district court or the [NLRB], he could not do both, and is now barred by the 'election of remedies' doctrine." *Id.* at 644.

The D.C. Circuit disagreed.  While acknowledging that "both the NLRB's backpay order and the jury's award of damages . . . were meant to remedy the consequences of the union's [mis]conduct," the Court explained that "the defendants' argument that [the plaintiff] should not be permitted to recover twice for the same course of conduct misses the mark." *Id.*  In particular, "even though [the plaintiff's] successful unfair labor practice charge was based on approximately the same factual pattern as [his claim for damages], both the rights vindicated and the remedies available under . . . the LMRDA . . . are distinct from those in an unfair labor practice action under the NLRA." *Id.* at 645.  Moreover, the D.C. Circuit noted, the trial court mitigated any remaining risk of a windfall to the plaintiff by instructing the jury to "subtract from its calculation of damages the amount of the [plaintiff's] backpay award, thus alleviating any possibility of double recovery for those lost wages." *Id.* at 644; *Cf. Artis v. Norfolk & W. Ry. Co.*, 204 F.3d 141, 145–46 (4th Cir. 2000) (precluding recovery, under election-of-remedies

principles, where the plaintiff's damages award could not be reduced to take account of his recovery under an earlier settlement agreement, leading to a double-recovery).

Here, the defendants argue that, having consented to reimbursement of its bid preparation costs before the CFC, "it would be inconsistent (and result in a windfall to Eco Tour) for Eco Tour to receive . . . the contracts themselves." Defs.' Reply at 9.  In support, the defendants contends that the plaintiff's claim under the APA arises out of the same facts and legal harm that underlay the plaintiff's earlier Tucker Act claim. *Id.* at 4 ("NPS breached the implied-in-fact contract to treat bids fairly just once.  The ultimate award of the contracts to the incumbent vendors was not a distinct breach but the consequence of NPS's treatment of the incumbents' proposal[s] as responsive in the first instance.")  Thus, they compare the plaintiff's present request for injunctive and declaratory relief, after having already accepted monetary damages, to "a claim for both specific performance of a contract and damages for breach." *Id.* at 10.

The defendants' argument on this score holds logical appeal.  Indeed, having voluntarily accepted reimbursement of its bid preparation costs, even after the CFC made clear that it lacked authority to grant further injunctive or declaratory relief, Eco Tour would appear to have knowingly accepted monetary damages from the defendants as fair compensation for the harm associated with its unsuccessful proposals for the disputed contracts.  Though Eco Tour contends that it expressly reserved its right to pursue future equitable relief during negotiations with the defendants leading to the joint stipulation underlying the final judgment resolving its claim before the CFC, Pl.'s Opp'n at 13–17, no such reservation was included in the CFC's judgment, *see* Judgment, *Eco Tour I*, and the plaintiff certainly cannot unilaterally "reserve" a right that it, by its own actions, extinguishes.  At the same time, however, the defendants concede that "there are circumstances where the same conduct can give rise to two remedies that are complementary

24

and not inconsistent."  Defs.' Reply at 10 (citing *Quinn*, 739 F.2d at 644–45; *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 50–51 (1973)).  Those are the circumstances present here.

Indeed, allowing Eco Tour's present claim to proceed does not present any meaningful inequity or necessarily pose a risk that Eco Tour will receive a windfall at the defendants' expense for at least two reasons.  First, during the pendency of the proceedings before the CFC, the NPS had not yet finalized its decision to award the disputed contracts to the incumbent concessioners.  Compl. ¶ 96 (alleging that the NPS awarded the contracts on July 16, 2014, two months after the CFC entered its final judgment resolving the plaintiff's first action).  Thus, according to the plaintiff, because the agency had not yet chosen to move forward with awarding the contracts to the incumbents, Eco Tour was unable to obtain the injunction it now seeks requiring the contracts to be awarded instead to it.  Pl.'s Opp'n at 23–24 & n.13.  Moreover, even assuming such relief was available at the time Eco Tour initially filed suit in the CFC, the Supreme Court has noted, in a related context, that parties bringing claims against the federal government may separately seek monetary and injunctive relief in sequential actions before the CFC and the district courts.  *See United States v. Tohono O'Odham Nation*, 563 U.S. 307, 318 (2011) (precluding CFC jurisdiction over the plaintiff's request for money damages while a suit for equitable relief arising out of the same facts was pending in the district court, but noting that, "[s]hould the [plaintiff] choose to dismiss the latter action, or upon that action's completion, the [plaintiff] is free to file suit again in the CFC [absent any other jurisdictional bar]").[6]

---

[6]        In contrast to this Supreme Court precedent, the defendants rely on a dated decision by the CFC for the proposition that a plaintiff "cannot 'recover damages [in the district court], and then come to the [CFC] to recover what the district court could not give her."  Defs.' Mem. at 11 n.3 (citing *Clark v. United States*, 19 Cl. Ct. 220, 223 (1990)).  To the extent that this non-binding authority is not abrogated by the Supreme Court's more recent consideration of the issue in *Tohono O'Odham Nation*, 563 U.S. at 318, the CFC's holding arose in the separate context of a negligence action giving rise to a potential claim in both the district court and the CFC, and turned on the court's interpretation of Congress's intent in adopting the Federal Tort Claims Act, *Clark*, 19 Cl. Ct. at 223, rather than, as here, under the APA.

Second, should the injunctive relief sought in this case raise the possibility of a windfall, the plaintiff has conceded that, "to the extent deemed necessary" any contracts awarded under this action "could address any prior partial relief received by Eco Tour pursuant to the Court of Federal Claims[] lawsuit."  Pl.'s Opp'n at 25 & n.14.  This proposed solution avoids the possibility that Eco Tour, should it prevail on the merits of its claim for injunctive and declaratory relief, will be compensated twice for the costs it incurred in preparing its responsive bids.  *Cf. Bannum, Inc. v. United States*, 56 Fed. Cl. 453, 462 (2003) (dismissing, as unripe, a bidder's request for reimbursement of bid preparation costs pending the resolution of a still-pending solicitation on the ground that the plaintiff, if ultimately awarded the contract, would not be entitled to an *additional* recovery of its bid preparation costs).

With these concessions in mind, the Court discerns no substantial inconsistency between the monetary award the plaintiff voluntarily accepted in connection with its earlier action before the CFC and the plaintiff's present request for injunctive and declaratory relief in this Court.  As such, the defendants' motion to dismiss the Complaint on election-of-remedies grounds is denied.

\*          \*          \*

The present action, coming as it does on the heels of the plaintiff's earlier successful claim before the CFC, presents an unusual situation.  As described above, *supra* Part III.A., the ADRA has largely funneled bid protests into a single forum, with the CFC authorized to grant broad relief to disappointed bidders demonstrating arbitrary and capricious action in most federal contracting decisions.  Under current Federal Circuit precedent, however, prospective contractors, like Eco Tour, whose bids for concessions contracts are unfairly considered by federal agencies are entitled, in the CFC, to no more than the costs they incurred in submitting

their bids.  At the same time, under the APA, such prospective contractors may sue, in district court, for only injunctive and declaratory relief and are precluded from seeking monetary damages.  Despite the fact that neither judicial forum may offer Eco Tour the full relief it seeks, the defendants press that contractors, like Eco Tour, who accept reimbursement of their bid proposal costs before the CFC may not, thereafter, obtain an injunction preventing a federal agency from awarding a concession contract in contravention of governing law and regulations.  According to the defendants, an alternative rule would subject federal agencies to repetitive challenges that raise the specter of redundant relief for prevailing plaintiffs.

The Court concurs with the defendants that important interests are served by requiring parties to bring all of their claims in a single proceeding.  Generally speaking, avoiding successive litigation arising out of the same course of conduct provides certainty and finality to parties while conserving limited judicial and litigants' resources.  Nonetheless, under the unusual circumstances presented here, these general concerns must be weighed against the important public interest in ensuring "that the government obtains the most advantageous contracts by complying with the procedures which Congress and applicable regulations have provided." *Delta Data Sys. Corp.*, 744 F.2d at 206.  The defendants' proposal to preclude review of potentially arbitrary and unfair contracting decisions simply because an aggrieved bidder has accepted a portion of the relief to which it may be entitled is squarely at odds with this central aim, and potentially undermines the public's interest in fair government contracting.

Thus, while the defendants may yet demonstrate that the plaintiff is not entitled to relief under the APA, the Court is not persuaded that the plaintiff is barred entirely from seeking complete relief for the defendants' allegedly arbitrary and capricious actions, and the defendants' request to dismiss the present action is therefore denied.

**IV.     CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), is denied.  The parties shall, in accordance with the Court's Standing Order ¶ 3, ECF No. 3, file jointly a Meet and Confer Report, by April 13, 2016, with a proposed schedule to govern further proceedings in this case.

An Order consistent with this Memorandum Opinion shall be filed contemporaneously.

Date: March 30, 2016

_____
BERYL A. HOWELL
Chief Judge