UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ECO TOUR ADVENTURES, INC.,       )
                                        )
       Plaintiff,              )
                                          )
       v.                    )         Civil Action No. 14-2178 (BAH)
                                          )
RYAN ZINKE, *in his official capacity as*   )
*Secretary of the Interior, et al.,*          )
                                          )
       Defendants.            )
_____)

**PLAINTIFF'S SUPPLEMENTAL BRIEFING
PURSUANT TO
COURT ORDERS DATED APRIL 18, 2017 AND APRIL 27, 2017**

Respectfully submitted,

 /s/ Kevin R. Garden
Kevin R. Garden, DC Bar No. 426745
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
Tel.:  (703) 535-5565; Fac.: (703) 997-1330
Counsel for Plaintiff
Eco Tours Adventures, Inc.

Dated:  May 18, 2017

# Table of Contents

I.  Introduction ........................................................................................................... 1

II.  The incumbent concessioners are not required parties, but even if they are, this
     case should proceed in equity and good conscience. .................................................. 1

     A.  Resolution of this matter will not impair or impede the incumbent
         concessioners' ability to protect their interests. ............................................... 2

     B.  The Court can accord complete relief among the existing parties. .................. 5

     C.  NPS will not be subject to a substantial risk of inconsistent obligations ......... 5

     D.  Even if the incumbent concessioners are required parties, their
         joinder is likely not feasible. ........................................................................... 7

     E.  If the incumbent concessioners are required parties who cannot be
         joined, this action should proceed in equity and good conscience. ................. 8

III.  The appropriate form of injunctive relief is for this Court to direct NPS to
      award the two contracts at issue to Eco Tour with appropriate provisions to
      protect the public interest. ......................................................................................... 10

     A.  Requiring NPS to award the contracts to Eco Tour as mandated by
         the law will protect the public interest in agencies' complying with
         the law and avoid a hollow victory that would discourage parties
         from challenging government wrongdoing. ..................................................... 10

     B.  Requiring NPS to award the contracts to Eco Tour is also
         appropriate because Eco Tour is capable of carrying out its highest
         rated proposal and the incumbents do not appear to have taken any
         reservations for the upcoming winter season or incurred any
         significant unrecovered costs. ....................................................................... 13

     C.  NPS can award contracts to Eco Tour that include appropriate
         provisions to protect the public interest. ...................................................... 15

IV.  Conclusion ............................................................................................................... 17

## Table of Authorities

_Cases_

*16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*,
   276 F.R.D. 8 (D.D.C. 2011)........................................................................................6-7

*Alpha Painting & Construction Co. Inc. v. Delaware River Port Authority*,
   __ F.3d __, 2017 WL 1279201 (3rd Cir. 2017) ............................................................... 3

*Ballerina Pen Co. v. Kunzig*, 433 F.2d 1204 (D.C. Cir. 1970) ............................................. 5

*Burka v. Aetna Life Ins. Co.*, 917 F. Supp. 8 (D.D.C. 1996) ................................................. 4

*Coalition on Sensible Transp., Inc. v. Dole*, 631 F. Supp. 1382 (D.D.C. 1986) ........... 7, 8, 9

*Corsi v. Eagle Publ'g, Inc.*, 2008 WL 239581 (D.D.C. Jan. 30, 2008)................................. 4

*Defenders of Wildlife v. Andrus*, 77 F.R.D. 448 (D.D.C. 1978) ............................................ 8

*Eco Tour Adventures, LLC v. United States*, 114 Fed. Cl. 6 (2013).............................. 13, 14

*Ervin and Associates, Inc. v. Dunlap*, 33 F. Supp. 2d 1 (D.D.C. 1997) .............................. 3

*FDIC v. Bank of New York*, 479 F. Supp. 2d 1 (D.D.C. 2007).......................................... 2, 6

*Federal Electric International, Inc. v. Marsh*, 1986 WL 74354 (D.D.C. 1986) .................. 4

*Friends of the Earth, Inc. v. EPA*, 446 F.3d 140 (D.C. Cir. 2006) ....................................5-6

*Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350 (2004) ...................... 12

*GTE New Media Services Incorporated v. Bellsouth Corporation*,
   199 F.3d 1343 (D.C. Cir. 2000)............................................................................................ 7

*International Graphics v. United States*, 4 Cl. Ct. 515 (1984) ........................................... 12

*Lebouef, Lamb, Greene & MacRae, L.L.P. v. Abraham*,
   347 F.3d 315 (D.C. Cir. 2003) ........................................................................................... 11

*Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs*,
   900 F. Supp. 2d 8 (D.D.C. 2012)......................................................................................... 8

*Nanko Shipping USA v. Alcoa, Inc.*, 850 F.3d 461 (D.C. Cir. 2017).................................... 8

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001) .................................................. 7

*Philippines v. Pimentel*, 553 U.S. 851 (2008).........................................................................3

*Provident Tradesman Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968) ........................8

*Ramah Navajo School Board, Inc. v. Babbitt*, 87 F.3d 1338 (D.C. Cir. 1996)................2, 4

*R.I.L-R, et al. v. Johnson*, 2015 WL 737117 (D.D.C. 2015) ................................................12

*Superior Oil Co. v. Udall*, 409 F.2d 115 (D.C. Cir. 1969) ...........................................11, 20

*Swomley v. Watt*, 526 F. Supp. 1271 (D.D.C. 1981) .......................................................9-10

*Three Affiliated Tribes of the Fort Berthold Indian Reservation v. United States*,
      637 F. Supp. 2d 25 (D.D.C. 2009) ...............................................................................2-3

*TRT Telecomm. Corp. v. W. Union Tel. Co.*, 1988 WL 19259 (D.D.C. 1988).....................6

*Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052 (1st Cir. 1987)..............................12

*United States Fire Insurance Company v. Milton Company*,
      938 F. Supp. 56 (D.D.C. 1996) ...........................................................................7, 9, 14

*Ward v. Deavers*, 203 F.2d 72 (D.D.C. 1953) ......................................................................4


<u>Statutes and Regulations</u>

5 U.S.C. § 702 ...........................................................................................................................5

5 U.S.C. § 706 ...........................................................................................................................5

36 C.F.R. § 51.20 ....................................................................................................................11

36 C.F.R. § 51.31 ....................................................................................................................11

<u>Other Authorities</u>

7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
      (2d ed. 1986) ...................................................................................................................6

## I.       Introduction

Plaintiff Eco Tour Adventures, Inc. ("Eco Tour") respectfully submits this supplemental briefing in response to the Court's Order dated April 18, 2017 (ECF No. 33) and Minute Order dated April 27, 2017.  As requested by the Court, this memorandum addresses whether the incumbent concessioners are required parties for purposes of Federal Rule of Civil Procedure 19 and the appropriate form of injunctive relief.  In addition, attached hereto is a detailed proposed order.

## II.      The incumbent concessioners are not required parties, but even if they are, this case should proceed in equity and good conscience.

In its Order, the Court directed the parties to address whether the incumbent concessioners should be joined as required parties pursuant to Federal Rule of Civil Procedure 19.  ECF No. 33.  As discussed further below, the incumbent concessioners' interests have been vigorously represented and protected by the National Park Service ("NPS").  Because of this fact, the incumbent concessioners are not parties who are required to be joined pursuant to Fed. R. Civ. P. 19(a) because resolution of this matter in their absence will not impair or impede their ability to protect their interests given NPS' involvement on their behalf.  In the alternative, if the Court were to determine that the incumbent concessioners are required parties who must be joined, such joinder does not appear feasible.  This conclusion is based on the incumbents appearing to lack sufficient personal contacts with the District of Columbia to support this Court having personal jurisdiction over them, which would result in the incumbents not being subject to service of process.  Nonetheless, as discussed further below, pursuant to Fed. R. Civ. P. 19(b), this action should proceed "in equity and good conscience" even if the incumbents are found to be required parties who cannot be joined to this action.

**A.      Resolution of this matter will not impair or impede the incumbent concessioners' ability to protect their interests.**

With regard to whether an entity is a "required party" under Fed. R. Civ. P. 19(a), this Court held in *FDIC v. Bank of New York*, 479 F. Supp. 2d 1, 10 (D.D.C. 2007), "[i]t is well settled that adjudicating an absent person's claim cannot 'impair or impede the person's ability to protect [his] interest if he is adequately represented by one of the existing parties.'" *Citing Ramah Navajo School Board, Inc. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996) (finding that where the United States can adequately represent the interest of a party, "the nonparties will not be considered 'necessary'"). *Bank of New York* involved an effort by the Bank of New York to have a lawsuit in this Court dismissed based on the Bank's claim that non-parties were the ones who had the legal right to receipt of the funds at issue in the case pursuant to the financial notes at issue. *Id*. at 3. The Bank argued that these non-parties had to be joined for the case to proceed. *Id*. at 9. The Court, however, rejected this argument because it found that the Bank adequately represented the interests of the third parties and would "zealously protect" the third parties' legal rights to the funds at issue. *Id.* at 12; *see id.* at 11 (finding defendant and non-parties had "no division[s], no differences, no disagreements, no quarrels" and therefore the non-parties' interests were not impaired).

This Court reached a similar conclusion in *Three Affiliated Tribes of the Fort Berthold Indian Reservation v. United States*, 637 F. Supp. 2d 25, 31 (D.D.C. 2009), finding that non-party contractors with the government were not required parties because the government "can adequately represent the interests of the [] contractors." In *Three Affiliated Tribes*, the plaintiffs submitted a contract proposal to the United States, which was rejected in part. *Id*. at 26. The government argued that the proposal, if accepted, would have reduced funding for other existing contracts held by other Tribes. *Id*. at 28. The government then tried to dismiss the lawsuit

because these other contractors were not parties in the case.  *Id*. at 30 (the government asserted that "the ongoing contractors are required parties because their absence could impair their ability to maintain their [contract] funding, and would subject [the government] to a risk of inconsistent obligations").  The Court noted that a "Rule 19 inquiry is 'complex, and determinations are case specific.'" *Id*. at 29, *quoting Philippines v. Pimentel*, 553 U.S. 851, 863 (2008).  The Court then held that the third party contractors were not required parties because the government "can adequately represent the interest of the ongoing contractors," thus "disposing of this action in their absence will not 'as a practical matter impair or impede [their] ability to protect' their interests under Rule 19."  *Id*. at 31; *see Alpha Painting & Construction Co. Inc. v. Delaware River Port Authority*, __ F.3d __, 2017 WL 1279201 at * 14 (3rd Cir. 2017)(finding that a disappointed bidder to a government contractor had "persuasively point[ed] out that [the contract awardee's] interests were fully represented by [the government agency], which zealously sought to uphold its designation of [the awardee as the lowest responsible bidder").  In addition, while this Court deferred on joining contract awardees in *Ervin and Associates, Inc. v. Dunlap*, 33 F. Supp. 2d 1, 13 (D.D.C. 1997), it nonetheless found that the factors did not support them being required parties.  *Id.* (deferring decision to join awardees as required parties because the "contract recipients have no part in resolving the constitutional and statutory dispute about the government's treatment of [plaintiff], and their joinder now would not relieve the government of any risk of incurring multiple obligations[, n]or does the failure to join them now create any impediment to their potential later recovery in separate lawsuits").

As in the cases discussed above, NPS has adequately represented the interests of the two awardees in this matter.  The issues in this case focused on the legality of the agency's compliance with its own regulations.  Memorandum Opinion at 17-38 (ECF No. 34)("Mem.

Op."). The agency, therefore, is in the best position to protect the incumbents because the issues

in the case hinge on whether the agency's own actions were in compliance with the agency's

own regulations and federal statutes. Moreover, the two awardees could not have presented any

facts that were not already part of the administrative record because that record was limited to

what the government considered. Mem. Op. at 2, n. 3. Therefore, the incumbents could not add

any facts to the case that the government itself did not include. Furthermore, NPS and the

incumbents had no divisions, no differences, no disagreements and no quarrels. Thus, the

positions of NPS and the awardees were exactly aligned- to ensure the awardees retained the two

contracts at issue.

      As the Court noted in its Memorandum Opinion, some courts have found that parties to a

contract which may be invalidated in the court proceeding are required parties under Fed. R. Civ.

P. 19. Mem. Op. at 46-47 (EFC No. 34). However, the District of Columbia Circuit Court made

clear in *Ramah Navajo School Board* that parties to contracts at issue in a lawsuit are not

required parties if the court finds that their interests are adequately represented. 87 F.3d at 1351

(nonparties who have contractual rights at issue in a lawsuit are not "necessary" if their rights are

adequately represented), *citing Burka v. Aetna Life Ins. Co.*, 917 F. Supp. 8, 12 (D.D.C.

1996)(nonparties with contractual right to use property at issue in suit not entitled to intervene as

of right because property owner adequately represented nonparties' interest). In the instant case,

both of the incumbent concessioners' rights are adequately represented by NPS. Thus, as shown

above and consistent with the holding in *Ramah Navajo School Board,* a resolution of this matter

will not, as a practical matter, impair or impede the incumbent concessioners' ability to protect

their interests given the NPS' vigorous defense of its decision to award the two contracts at issue to those parties.[1]  *See* Fed. R. Civ. P. 19(a)(1)(B)(i).

**B.      The Court can accord complete relief among the existing parties.**

In the instant matter, the Court can accord complete relief among the existing parties. Thus, the criteria for a required party set out at Fed. R. Civ. P. 19(a)(1)(A) is not met.  The relief being sought is rescission of the two existing illegal contracts awarded to the two incumbents by NPS and award of two contracts for the same services to Eco Tour.  The two incumbents do not need to be parties to this lawsuit in order for the Court's order to be binding on them because the Court has full authority to invalidate the federal agency decision which led to the contracts being awarded.  5 U.S.C. § 706(2)(A)(the court "shall [] set aside agency action [] found to be [] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  In addition, upon those contract being set aside, this Court also has the full authority to direct NPS to award the two contracts to Eco Tour as mandated by federal regulations.  5 U.S.C. § 706(1)(the court "shall [] compel agency action unlawfully withheld").

**C.      NPS will not be subject to a substantial risk of inconsistent obligations.**

In addition, the criteria set out in Fed. R. Civ. P. 19(a)(1)(B)(ii) for determining if a party is required to be joined in an action has not been met because the Court's resolution of this matter will not subject NPS to a substantial risk of incurring multiple inconsistent obligations. As noted above, based on this Court's finding that NPS acted arbitrarily, capriciously and not in

---

[1] *Compare Ward v. Deavers*, 203 F.2d 72 (D.D.C. 1953)(no discussion of whether missing party's interests were adequately represented in finding missing party was required to be joined); *Corsi v. Eagle Publ'g, Inc.*, No. 1:07-CV-02004ESH, 2008 WL 239581, at *4 (D.D.C. Jan. 30, 2008)(rejecting argument that defendant adequately represented interests of missing party before holding that missing party must be joined); *Federal Electric International, Inc. v. Marsh*, Civ. Action No. 86-2209, 1986 WL 74354, at * 2 (D.D.C. 1986)(finding successful bidders to be required parties but not discussing whether the agency could adequately represent their interests).

accordance with law, the contracts are automatically invalidated because the APA requires that

the agency's actions in awarding the contracts be set aside.  5 U.S.C. § 706(2)(A); *see Ballerina*

*Pen Co. v. Kunzig*, 433 F.2d 1204, 1215 n. 16 (D.C. Cir. 1970)("The Administrative Procedure

Act provides for voiding such agency action"); *Friends of the Earth, Inc. v. EPA*, 446 F.3d 140,

148 (D.C. Cir. 2006)(Court directed to "vacate" the agency action found to violate the APA).

Therefore, the two incumbents have no (and arguably never had any) rights under those set-aside

contracts which they can assert against NPS.

Also, NPS cannot claim that it may be subject to inconsistent contractual obligations by

the incumbents if the contracts are rescinded because any such claim would arise as a result of

those contracts no longer being in effect.  Thus, the only concessioner with a legal contract and

the rights to provide the services at issue would be Eco Tour.  In addition, the incumbents will be

bound by this Court's injunctive relief setting aside their contracts and directing that Eco Tour be

awarded the contracts pursuant to Fed. R. Civ. P. 65(d).  That rule states that an injunction is

binding on the parties and "upon those persons in active concert or participation with them who

receive actual notice of the order by personal service or otherwise."  Fed. R. Civ. P. 65(d).  As

parties to the NPS contracts at issue, both incumbent concessioners fall under this rule.  *See Bank*

*of New York*, 479 F. Supp. 2d at 12 (D.D.C. 2007)(finding third parties with contract interests

impacted by court decision were bound by Fed. R. Civ. P. 65(d)).

Furthermore, the possibility of any such claims by the incumbents is purely speculative.

*See* Mem. Op. at 44 (defendants' concern over potential litigation from its incumbent

concessioner was "purely speculative").  As found in *Bank of New York*, 479 F. Supp. 2d at 12

(D.D.C. 2007), "[i]n order to qualify as a required party under Rule 19(a), the possibility of

being subject to multiple or inconsistent obligations must be real, and not a mere possibility."

*Quoting TRT Telecomm. Corp. v. W. Union Tel. Co.*, No. 87-2760, 1988 WL 19259, at *2

(D.D.C. 1988), *citing* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1604 at 62 (2d ed. 1986); *16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*,

276 F.R.D. 8, 16 (D.D.C. 2011)("the mere risk of potential litigation is not enough to require

joinder").

> **D.     Even if the incumbent concessioners are required parties, their joinder is likely not feasible.**

Even if the incumbent concessioners were required parties under Fed. R. Civ. P. 19(a)(1),

it does not appear that they can be joined in this case because they are not subject to service of

process due to a lack of personal contacts with the District of Columbia.  *See United States Fire*

*Insurance Company v. Milton Company*, 938 F. Supp. 56, 57-58 (D.D.C. 1996)(noting apparent

lack of personal contacts of required party with the District of Columbia); *see also PaineWebber,*

*Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001)("If the party is deemed necessary for the reasons

enumerated in Rule 19(a), the court must next consider whether the party is subject to personal

jurisdiction").  The two incumbents are located in Wyoming and incorporated in Wyoming.  AR

584, 662.  Eco Tour is unaware of the incumbents having any presence in or contacts with the

District of Columbia sufficient to form the basis for this Court having personal jurisdiction over

the incumbents.  *See GTE New Media Services Incorporated v. Bellsouth Corporation*, 199 F.3d

1343, 1347 (D.C. Cir. 2000)(setting forth standard for establishing this Court's personal

jurisdiction over parties); *Coalition on Sensible Transp., Inc. v. Dole*, 631 F. Supp. 1382, 1383-

1385 (D.D.C. 1986)(same).

In the event a required party cannot be joined to a lawsuit due to a lack of personal

jurisdiction over that party, the criteria in Fed. R. Civ. P. 19(b) must be applied to determine if

the case should nonetheless proceed "in equity and good conscience."

**E.**     **If the incumbent concessioners are required parties who cannot be joined, this action should proceed in equity and good conscience.**

If the Court determines that the incumbent concessioners are required parties but the cannot be joined, this action should nonetheless proceed "in equity and good conscience" as set out in Fed. R. Civ. P. 19(b).  *See Nanko Shipping USA v. Alcoa, Inc.*, 850 F.3d 461, 465 (D.C. Cir. 2017)(finding that deciding not to proceed with case under Rule 19(b) "is a power to be exercised only "[i]n rare instances")(citations omitted).  Notably, while Fed. R. Civ. P. 19(b) sets out certain factors for the Court to consider, the Court is not limited to those factors and must makes its own determination as to whether the action should proceed "in equity and good conscience."  *See Coalition On Sensible Transportation Inc.*, 631 F. Supp. at 1386 (D.D.C. 1986)(setting out test for determining if case should proceed in equity and good conscience). The Supreme Court has set out four interests that must be examined as part of the analysis of whether the case should proceed "in equity and good conscience."  *Id., citing Provident Tradesman Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109 (1968).  As shown below, each of those interests weigh in favor of this case proceeding.

The first interest is "the plaintiff's interest in having a forum."  *Coalition On Sensible Transportation Inc.*, 631 F. Supp. at 1386 (D.D.C. 1986).  As the Court in *Coalition On Sensible Transportation Inc.* noted, the presence of another federal court where the case could be heard does not defeat the plaintiff's interest in the forum it has chosen and the delays caused by a transfer, especially after this case has nearly reached completion without objection, weigh against discontinuing the case.  *Id.*; *Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs*, 900 F. Supp. 2d 8, 15 (D.D.C. 2012)("the Court considers efficiency—a particularly forceful consideration at this [late] stage of litigation"); *Defenders of Wildlife v. Andrus*, 77 F.R.D. 448, 452 (D.D.C. 1978)("federal courts have been very reticent to dismiss on the grounds of failure to

join an indispensable party, except when serious prejudice or inefficiency will result"). In addition, plaintiff's counsel is located in the D.C. area and the cost to plaintiff's counsel in litigating in a different court is also a factor that supports continuing the case in this forum. *Coalition On Sensible Transportation Inc.*, 631 F. Supp. at 1386 (D.D.C. 1986).

The second interest is "the defendant's interest in avoiding inconsistent relief or multiple litigation." *Coalition On Sensible Transportation Inc.*, 631 F. Supp. at 1386 (D.D.C. 1986). As noted above, there is no substantial risk of inconsistent relief or multiple litigation due to any legal actions by the incumbents because they likely have no rights given that the federal action that led to their contracts must be set aside and they are bound by this Court's injunctive relief order. Thus, this interest does not favor discontinuing this case.

The third factor is the absent parties' interest in protecting their rights. *Id.* Because NPS is adequately representing the incumbents' rights, this factor does not support discontinuing this case. *Id.* (finding the substantial identity of interest between the defendants and non-parties supports finding that the case should proceed). In addition, the ability of the non-parties to intervene shows any such interest can easily be protected. *Id.* As this Court held in *United States Fire Insurance Company*, 938 F. Supp. at 57-58, any prejudice to the two incumbents can be avoided if they were to seek to intervene in this action of which they have notice. Therefore, as held in *United States Fire Insurance Company*, the fact that the incumbents control whether or not they become a party is "dispositive of the 'equity and good conscience' test." *Id.* at 58. Accordingly, this interest also does not favor discontinuing this case.

The fourth factor is "the public interest in complete and efficient resolution of controversies." *Coalition On Sensible Transportation Inc.*, 631 F. Supp. at 1386 (D.D.C. 1986). Because this Court can issue complete relief and moving this case to a new court at this stage

would be inefficient, this factor also does not favor discontinuing the case.  Moreover, there is no

basis to conclude there is a substantial risk of duplicative litigation given the incumbents

decisions not to intervene in this or the prior bid protest before the Court of Federal Claims.  *See*

*id.* at 1387.  In addition, as to the public interest, this Court has held that "it is well settled that

even when a party might otherwise be indispensable, joinder is not required where the plaintiff

seeks to vindicate public rights."  *Swomley v. Watt*, 526 F. Supp. 1271, 1273 (D.D.C. 1981).  As

this Court held, "the public interest favors granting relief" in this matter.  Mem. Op at 40.

Therefore, for the reasons set forth above, even if the incumbent concessioners are

required parties who cannot be joined, this case should proceed in "equity and good conscience"

pursuant to Fed. R. Civ. P. 19(b).

## III.   The appropriate form of injunctive relief is for this Court to direct NPS to award the two contracts at issue to Eco Tour with appropriate provisions to protect the public interest.

Pursuant to the Court's direction, set out below is a more detailed proposal for the

specific equitable relief which Eco Tour believes should be issued in this matter.  Mem. Op. at

45.  As discussed below, this proposal mitigates any adverse impact on the public and the

incumbents.  In addition, attached hereto is a proposed order consistent with this requested relief.

### A.      Requiring NPS to award the contracts to Eco Tour as mandated by the law will protect the public interest in agencies' complying with the law and avoid a hollow victory that would discourage parties from challenging government wrongdoing.

As the facts in this case make clear, NPS is bound and determined to ensure that, even

after having flagrantly disregarded the law, nonresponsive contractors with a right of preference

will continue as the concessioners at Grand Teton National Park.  Mem. Op. at 49 (NPS issued

the contracts in "flagrant disregard" of a court finding and refused to award the contracts to Eco

Tour).  Eco Tour agrees with the Court's findings that this outcome would be improper because

the agency's takeaway would be that, notwithstanding any declaratory ruling that the agency

violated the law, the bottom line is that the agency will be allowed to proceed as planned

regardless of that violation.  *Id.*  As the Court also found, Eco Tour would get a "hollow victory"

if Eco Tour does not actually receive the contracts as a result of persevering through its legal

challenge.  *Id.*  But for NPS' illegal conduct, Eco Tour would have been awarded the contracts.

Mem. Op. at 36, n. 12 (a court can order a contract award in "precisely the situation here").  As

NPS has demonstrated by its actions, if it is given any leeway as to who the concessioner will be,

it will do everything and anything it can to ensure it is not Eco Tour.  For these reasons, the

specific form of equitable relief must ensure that the law is followed and the contracts are

awarded to Eco Tour.

The law is clear that, where NPS has decided to proceed with concession services as in

this case, the contract must be awarded to the best responsive proposal for those services.  36

C.F.R. § 51.31.[2]  Eco Tour submitted the best responsive proposal for the services at issue.

Therefore, under the law, the contracts for these services should have been awarded to Eco

Tour.[3]  Because NPS has shown that it wants the incumbents to keep these contracts and will

---

[2]  Section 51.31 states:

**What happens if a preferred offeror does not submit a responsive proposal?**

If a preferred offeror fails to submit a responsive proposal, the offeror may
not exercise a right of preference. The concession contract will be awarded
to the offeror submitting the best responsive proposal.

(Emphasis in original.)

[3] While the law permits NPS to cancel a solicitation if it decides that it no longer wants to
proceed with a contract for concession services (36 C.F.R. § 51.20), that line was crossed when
NPS decided to proceed with this concession by awarding the contracts.  Thus, any attempt by
NPS to now cancel these services would clearly be arbitrary and retaliatory against Eco Tour.
*See LeBoeuf, Lamb, Green & MacRae, L.L.P. v. Abraham,* 347 F.3d 315, 325 (D.C. Cir.
2003)(remanding the disappointed contractors' request for an injunction awarding a contract for

violate the law to achieve this result, an order by this Court that NPS reconsider the original

solicitation or re-solicit for the contracts will have a foregone conclusion, *i.e.*, NPS will select

the incumbents and not Eco Tour.  This outcome would give Eco Tour a hollow victory.  *See*

*Superior Oil Co.v. Udall,* 409 F. 2d 1115, 1122 (1969) (upholding directed award, noting that

"[i]t would be plainly inequitable to [plaintiff] and damaging to the long range public interest in

the integrity of the bidding process to allow [the original awardee], whose error was created this

problem, to have a second opportunity to bid against [plaintiff] and all other bidders"); *Great*

*Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 369-70 (2004)(court prohibited

cancelling of prospectus and enjoined agency to proceed with plaintiff as awardee); *Ulstein*

*Maritime, Ltd. v. United States*, 833 F.2d 1052, 1058-1059 (1st Cir. 1987)(allowing a new

competition after bids are disclosed would be unfair and frustrate the policies behind allowing

*Scanwell* actions).

Notably, NPS has not made any improvements to its solicitation process since the

original solicitation that would justify going through a new solicitation because it might

result in a better evaluation.  Moreover, even if NPS claims it made slight changes to its

evaluation process over the years, the benefit of these changes does not exceed the

significant benefit to the public of ensuring agencies follow the law.  *R.I.L.-R. v. Johnson*,

2015 WL 737117 at *19 (D.D.C. 2015)(the public interest is served when agencies follow

the law); *Superior Oil Co.*, 409 F.3d at 1122 (the public has a long range interest in

protecting the integrity of the bidding process).  In addition, Congress has not changed its

---

legal services where evidence in the record indicated that the agency had a continuing need for
such services).

policy preference against concessioners being awarded contracts based on them having a right of renewal.  *See* Mem. Op. at 40.  Thus, there is no cogent reason to discard Eco Tour's highest rated proposal especially after its best portions were disclosed to the incumbents.  *See Ulstein Maritime, Ltd.*, 833 F.2d at 1058-1059 ("To have a set of bids discarded after they are opened and each bidder has learned his competitor's price would not be permitted except for cogent reasons"), *quoting International Graphics v. United States*, 4 Cl. Ct. 515, 518 (1984); *see also Eco Tour Adventures, Inc. v. United States*, 114 Fed. Cl. 6, 16 (2013)(NPS advised JHMR and Hole Hiking that they could exercise a right of preference by agreeing to match twelve terms of Eco Tour's proposals that the evaluation panel "determined were elements of a better offer").

For these reasons, the injunctive relief should require NPS to award the contracts to Eco Tour rather than allowing NPS to conduct a new evaluation or re-solicitation.

**B.      Requiring NPS to award the contracts to Eco Tour is also appropriate because Eco Tour is capable of carrying out its highest rated proposal and the incumbents do not appear to have taken any reservations for the upcoming winter season or incurred any significant unrecovered costs.**

A directed award of the contracts at issue is also appropriate because Eco Tour remains able to perform as proposed, the public would not be harmed by a change in concessioners and the incumbents would not incur any unrecovered costs.  Eco Tour's financial condition is the same as it was at the time it submitted its proposal.  Declaration of Taylor Phillips at ¶ 4 (attached hereto)("Phillips Dec.").  Eco Tour also has the same resources available to it as set out in its proposal for the purpose of performing under the contracts at issue.  *Id*. at ¶ 5.  There are no changes in Eco Tour's circumstances since it submitted its bid that would impact its ability to perform the contracts at issue.  *Id*. at ¶ 6.

Similarly, the impacts of rescinding the contracts illegally awarded to the two incumbents do not justify allowing the agency to get away with its illegal conduct.  First, the incumbents, as members of the public and entities interested in bidding on NPS concession contracts, also will benefit by ensuring that the agency follow the law in carrying out its concession program.  In addition, Hole Hiking and JHMR insisted in their proposals, and NPS agreed, that they had no start-up costs to perform under the contracts.  *Eco Tour Adventures, Inc. United States*, 114 Fed. Cl. at 29 (NPS "concluded that [JHMR]'s status as the incumbent concessioner supported [JHMR]'s assertion that it had no start-up costs")("Hole Hiking responded in [principal selection subfactor 4(b) ] that it would not have any start-up expenses and the response in [principal selection subfactor 4(c) ] supported this assertion").[4]  Furthermore, if the incumbents had any start-up costs they were concerned about and had not recovered in their two years of performance, they likely would have promptly intervened in this matter after receiving the notice on April 27, 2017 pursuant to this Court's order to present their position on this issue.  *Se*e Notice of Filing Regarding Memorandum Opinion and Order (ECF No. 36); *United States Fire Insurance Company*, 938 F. Supp. at 57-58 (any prejudice to a third party by a court action they are aware of can be avoided by intervening in the action).

In addition, Hole Hiking uses the same equipment for other tours it offers on the surrounding National Forests.  *See http://www.holehike.com/ski-snowshoe-winter-tours/* ("Tours are offered in Grand Teton National Park and in the surrounding National Forest").  This fact further supports the likelihood that Hole Hiking can recover the costs of any equipment it may

---

[4] As Eco Tour pointed out, the incumbents' proposals actually did show that they would have start-up costs.  *Eco Tour Adventures, Inc.,* 114 Fed. Cl. at 30.  However, NPS dismissed Hole Hiking's projected start-up costs as "immaterial" because they were "low" and JHMR's costs as "immaterial" because they were not required and not "firm commitments" for contract performance.  *Id*.

have purchased by using it in its other operations.  JHMR's website shows that it likely has no

costs because it urges its visitors to use other businesses for tours in the area (including Eco

Tour), and nowhere does the website demonstrate that JHMR itself provides any winter tours in

the Park.  *See https://www.jacksonhole.com/summer-things-to-do/summer-wildlife-tours.html*.

This fact is consistent with Eco Tour's understanding that JHMR has provided very few services

under its contract.  Phillips Dec. at ¶ 8.  For the foregoing reasons, rescinding the contracts

would not appear to result in any, much less significant adverse impacts to the two incumbents.

In addition, it is unlikely that the incumbents have taken any, or at a minimum many,

reservations for the upcoming winter season.  Typically, tour outfitters in the Grand Teton

National Park area do not get many reservations for the winter season until the Fall prior to that

season.  Phillips Dec. at ¶ 7.  Moreover, in the event any member of the public has made

reservations with either Hole Hiking or JHMR for the 2017-2018 winter season, Eco Tour agrees

to honor that reservation at the price quoted by either incumbent.  *Id.* at ¶ 9.  For these reasons,

there is no need to allow the illegally awarded contracts to continue for yet another winter season

to prevent any adverse impacts to the public.

**C.      NPS can award contracts to Eco Tour that include appropriate
          provisions to protect the public interest.**

NPS can award contracts to Eco Tour that include provisions ensuring the public interest

is protected.  These terms would include a requirement that Eco Tour return payments it received

for its proposal preparation costs as part of its franchise fee payment, an effective date of the

contracts beginning during the upcoming summer so that Eco Tour can begin preparing for

operations, including any portions of Eco Tour's proposal which NPS desires to include as

described in the original Proposal Instructions, and a full term of 10 years so that Eco Tour is

provided the full contract term as set out in the Prospectus needed to recover its proposal costs.

15

The draft contracts which NPS intended to award pursuant to the Prospectus at issue (Solicitation # CC-GRTESKI-13) are set out at AR 59-101, and consist of CC-GRTE024-13 ("Contract 24") and CC-GRTE032-13 ("Contract 32") (*see* AR 13).  NPS attached one boilerplate version of the contract to the Prospectus which included specific clauses to be inserted into each particular contract.  AR 59-101.  These draft contracts are the ones NPS intended to award pursuant to the Prospectus.

The draft contract as set out in the Prospectus required the concessioner to pay franchise fees annually and within 60 days of the end of its normal operating season.  *See* AR 64.  Eco Tour received $36,250 from the government as repayment for its proposal preparation costs. Mem. Op. at 11.  Eco Tour requests that the contracts awarded to Eco Tour require it to return these funds as part of its franchise fee at the end of its first operating season, with each contract requiring a payment of $18,125 at the end of the first year in addition to the 4.25% franchise fee. By doing so, Eco Tour can generate the needed revenues during its operations and the public fisc will not be harmed.  In the alternative, Eco Tour is willing to pay the full $36,250 at the outset of its concession contracts if required by the Court.

In addition, the Prospectus stated that NPS might include "appropriate elements of the proposal selected for award" in the final concession contract.  AR 31 (¶ p).  These elements can include aspects of the Operating Plan, which are typically tailored to the specific awardee based on its proposal.  *See, e.g.*, AR 31-40 (Hole Hiking's Operating Plan includes certain provisions related to its proposal).  Eco Tour, therefore, requests that this Court provide NPS with the authority to make these appropriate adjustments to the draft contracts.  In addition, on its cover page and in Section 1, the draft contract includes references to the exact dates which represent the beginning and end of the contract's 10 year term.  AR 59, 63 (Sec. 1).  Accordingly, Eco

Tour requests that the Court direct NPS to insert the appropriate dates in the new contracts to ensure the contracts are issued for 10 year terms, with an effective date of July 21, 2017 if not earlier.  Both contracts need to be for the full 10 years because Eco Tour's decision to invest $36,500 in preparing its proposal, which it will be returning to NPS, was based on the revenues expected to be received over the stated 10 year term for both contracts.

## IV.     Conclusion

For the reasons set forth above, Eco Tour Adventures, Inc. respectfully requests that the Court award equitable relief by issuing an order which:

-sets aside the National Park Service's decision to award the two existing concession contracts held by incumbent concessioner as contrary to law and rescinds those contracts;

-orders the National Park Service to award the two contracts for which the National Park Service sought proposals in Solicitation # CC-GRTESKI-13, GRTE024-13 ("Contract 24") and GRTE032-13 ("Contract 32") which are set out at AR 59-101 to Eco Tour by July 21, 2017, with the only changes being those consistent with the following:

-the need to incorporate elements of Eco Tour's proposal as set out at AR 31 (¶p);

-changes to the dates to reflect the ten year term of the contracts (AR 59, 63); and

-a provision ensuring that, in addition to paying a franchise fee of 4.25% pursuant to Section 5(a) of the contracts (*see* AR 64), Eco Tour pay to the National Park Service the amount of $18,125 under each contract within 60 days of the end of the first normal operating season.[5]

---

[5] As set out in its Complaint, Eco Tour Adventures, Inc. is also seeking as additional relief attorneys' fees in this matter and will be submitting a motion for those fees in accordance with the Equal Access to Justice Act.

Respectfully submitted,

 /s/ Kevin R. Garden
Kevin R. Garden, DC Bar No. 426745
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
Tel.:  (703) 535-5565; Fac.: (703) 997-1330
Counsel for Plaintiff
Eco Tours Adventures, Inc.

Dated:  May 18, 2016