## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ECO TOUR ADVENTURES, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **RYAN ZINKE,** *in his official capacity as* | ) |
| *Secretary of the Interior, et al.* | ) |
| | )    **Case No. 14-02178 (BAH)** |
| | ) |
| **Defendants.** | ) |
| | ) |

### SUPPLEMENTAL MEMORANDUM IN RESPONSE
### TO THE COURT'S ORDER OF APRIL 18, 2017

The Court, in its order of April 18, 2017, declared that the defendants engaged in actions that were arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law by permitting each of two incumbent concessioners (Jackson Hole and Hole Hiking) to amend their bids for Contract GTRE-024 and Contract GTRE-032, and subsequently making final awards of those contracts to the respective incumbent concessioners.   The Court directed the parties to brief the following issues: (1) whether the incumbent concessioners should be joined as parties, under Federal Rule of Civil Procedure ("Rule") 19; and (2) in light of the holdings and practical considerations raised in the memorandum opinion that accompanied the Court's April 18, 2017, order, the appropriate form of injunctive relief, along with detailed proposed orders.

In response, plaintiff submitted supplemental briefing arguing that the incumbent concessioners are not indispensable parties and proposing as a remedy that the Court rescind the contracts awarded to the incumbent concessioners and award the contracts instead to Eco Tour for

a full ten year term, with a 4.25% annual franchise fee.   With respect to the $36,250 bid preparation costs that Eco Tour was previously reimbursed by the government, Eco Tour proposes that the full amount be repaid at the conclusion of the first year of its proposed contracts ($18,125 per contract), but acknowledges that it can repay the full amount "at the outset" of the proposed contracts if required by the Court.

As discussed below, defendants disagree with plaintiff's proposal. First, the incumbent concessioners are indispensable parties on the issue of remedy because any proposed remedy – beyond maintaining the status quo as defendants urged in their unsuccessful summary judgment motion – would impact the incumbents' rights under the existing concession contracts that have been in place for three years.   Because the incumbents are indispensable parties and Eco Tour selected a forum in which personal jurisdiction is lacking over them, their joinder in this action is infeasible and, consequently, the appropriate course at this stage is to dismiss this action without prejudice.

Second, if the Court determines that it can adjudicate the issue of remedy even though the incumbent concessioners have not been joined as parties, and with the understanding that the Court already appears to have rejected defendants' proposal to maintain the status quo,[1] then the applicable remedy under the APA would be for the Court to vacate the challenged contract award decisions and remand the matter back to the agency for further proceedings.   Under the

---

[1]      Defendants are submitting this supplemental brief at the direction of the Court to address the issue of remedy.   This submission is subject to, and without waiving, defendants' position that Eco Tour already elected a remedy of bid preparation costs for the procedural violations at issue, that Eco Tour has not met the standard for injunctive relief, and that further relief is not appropriate. The proposal herein is made subject to, and without waiving, those arguments.

circumstances here, that would involve invalidating the existing concession contracts and remanding to the agency to make a determination as to how to proceed with respect to providing the public with the guided cross country ski touring services that are the subject of the two contracts.

Defendants, moreover, assert that the Court lacks authority under the APA to order the award of the two concession contracts to Eco Tour because the decision whether to award a contract is one within the discretion of the agency.   Lastly, in the event the Court accepts Eco Tour's proposed remedy, Eco Tour should be required to repay the $36,250 in bid preparation costs that it previously received as a pre-condition of the Court rescinding the existing contracts and awarding them to Eco Tour.

## I.   The Incumbent Concessioners Are Indispensable Parties At This Stage.

### A.   The Incumbent Concessioners Are Required Parties Under Rule 19(a).

Rule 19 provides, in relevant part, that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party" if either one of two conditions is satisfied.   The first condition is that "in that person's absence, the court cannot accord complete relief among existing parties."   The second condition applies when "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *See* Fed. R. Civ. P. 19(a)(1).

Here, to the extent the Court is considering whether to invalidate the concession contracts currently held by Jackson Hole and Hole Hiking, there can be no meaningful dispute that those two concessioners are indispensable parties.   *See, e.g.*, *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995) ("as the district court assumed, the State of Kansas has an interest in the validity of a compact to which it is a party, and this interest would be directly affected by the relief that the Tribe seeks"); *Detroit Int'l Bridge Co. v. Gov't of Canada*, 192 F. Supp. 3d 54, 68 (D.D.C. 2016) (interpreting Rule 19 as providing that "'all parties to a contract are necessary in litigation seeking to 'decimate' that contract'"); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002) (observing that, "'no procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable'").   Jackson Hole and Hole Hiking have a direct interest in the subject matter of the litigation – the two concession contracts under which they have been performing for three years – and that interest will be impaired if the Court invalidates those contracts or, in addition to invalidating them, affirmatively awards them to Eco Tour as it has requested.   This Court recognized as much in its April 18, 2017, memorandum opinion when it observed that "the incumbents' interests are inextricably bound up in . . . fashioning the appropriate relief to which the plaintiff is entitled to remedy the agency's violation of the APA."   (Mem. Op. at 47)

Eco Tour concedes this point, but contends that the incumbent concessioners are not required parties because their interests "have been vigorously represented and protected by the National Park Service" in this action.   (Pl. Supp. Mem. at 1)   Eco Tour's position, however, fails to recognize the distinction between the liability phase of this matter, which is now over, and the

remedy phase currently at issue, a distinction this Court also recognized in its memorandum opinion.    (Mem. Op. at 47, observing that "the purely legal question of whether NPS violated the APA may be resolved without requiring the joinder of the incumbent concessioners").

Defendants acknowledge that they did not raise Rule 19 as a bar to this action on the issue of liability under the APA that was the subject of defendants' motion to dismiss and motion for summary judgment.    In those filings, defendants argued that Eco Tour had elected and received a remedy of bid preparation costs that precluded this lawsuit and that also rendered the agency's decision to proceed with the award of the contracts to the incumbent concessioners reasonable and in accordance with law.    The Court ruled against the agency's position and determined that the agency acted arbitrarily and capriciously in proceeding with those awards.    As in *Ervin & Associates, Inc. v. Dunlap*, 33 F. Supp. 2d 1 (D.D.C. 1997), that phase of the lawsuit focused on a "statutory dispute about the government's treatment of" Eco Tour and did not necessarily implicate the rights of the incumbent concessioners.    *Id.* at 13; *see also* Mem. Op. at 47, citing *Ervin.*

That phase of the lawsuit, however, is now over and the Court is now considering the issue of remedy, an issue that directly impacts the incumbent concessioners and about which the agency does not adequately represent their interests.    Among other things, those concessioners are in the best position to provide evidence and argument about any prejudice that they would experience if the contracts were invalidated at this point and to address in detail any other equities applicable to their businesses that might counsel against such a remedy, including those identified by the Court in its memorandum opinion.    (Mem. Op. at 49-50, identifying such things as whether visitors to the parks may already have made reservations and the nature of any reliance costs that have been incurred).    The government, in contrast, is not in a position to make such arguments beyond

5

generally observing that the incumbent concessioners "would be prejudiced by a judgment rendered in [their] absence."   *Detroit Int'l Bridge Co.*, 192 F. Supp. 3d at 69.[2]

Indeed, the government's interest has never been to advocate for the interests of the incumbent concessioners but always has been to act in the public interest in a manner consistent with what the agency understands to be its role in making contracting decisions that best serve that interest.   At the liability stage, the agency's position that the public interest was best served by maintaining the status quo also was consistent with the interest of the incumbent concessioners. However, at the remedy stage, and in light of the Court's apparent rejection of the government's proposal to preserve the status quo, these interests no longer overlap.   The government is proposing a remedy – invalidating the contracts and remanding to the agency for further proceedings to be carried out in the agency's discretion – that it believes is consistent with the public interest and which diverges from the interest of the incumbent concessioners to maintain their contracts. Consequently, at this stage, the government cannot be said to "adequately represent" the incumbent concessioners.   *See also supra* note 2.

---

[2]   After NPS served a copy of the Court's memorandum opinion and order on the incumbent concessioners pursuant to the Court's April 18, 2017 order, NPS received an email from one of the concessioners identifying some of the harm it would experience by having the contracts invalidated.   (Parker Decl. ¶ 8)   NPS also receives annual reports from the concessioners regarding their revenue.   (*Id.* ¶ 10)   The government has previously observed that "[w]hether or not Jackson Hole and Hole Hiking ultimately could assert a valid claim against the government, disrupting the contracts so far into their performance period also could subject the government to potential litigation from one or both of those concessioners."   (ECF No. 31, MSJ Reply at 16-17). Although the Court characterized that concern as "purely speculative" (Mem. Op. at 44), it is a concern nonetheless that precludes the government at this stage in the litigation from taking a position as to the extent of harm to the incumbent concessioners that might ensue if the contracts are invalidated.   *See United States v. Amdahl Corp.*, 786 F.2d 387, 395 (Fed. Cir. 1986) ("a contractor is entitled to his day in court to determine his rights vis-à-vis the government, regardless of the success of a protest").

Courts, moreover, recognize that a party to a contract is a necessary party in litigation over the validity of the contract and that the contracting party has a unique interest in defending the contract that cannot be adequately represented by other parties to the contract.   *Detroit Int'l Bridge Co.*, 192 F. Supp. 3d at 68 ("although Canada and the Federal Defendants have an interest in protecting the Crossing Agreement's validity, the State of Michigan is still necessary. Otherwise, 'one seeking to nullify an agreement could simply sue one of the signatories and then argue that the remaining signatories were not necessary because the existing defendant would 'adequately represent' their interest in defending the contract'").

The cases cited by Eco Tour are inapposite.   The first case that Eco Tour cites, *Three Affiliated Tribes of the Fort Berthold Indian Reservation v. United States,* 637 F. Supp. 2d 25 (D.D.C. 2009), did not involve litigation seeking to invalidate a contract in which a party to the contract has not been joined.   Although the second case, *Alpha Painting & Construction Co. v. Delaware River Port Authority*, 853 F.3d 671 (3d Cir. 2017), involved a lawsuit by a disappointed bidder that failed to name the entity that won the contract award, the court determined that the absent party was not indispensable because a contract had not yet been formally awarded at the time of the court's decision.   *Id.* at 688.   Here, in contrast, the incumbent concessioners not only received a formal contract award, but they have been performing under their respective contracts for several years.   Although the Third Circuit also observed that the government had adequately represented the interests of the absent party in the bid protest litigation, that observation was *dicta* and, in any event, does not speak to a situation where, as here, the incumbent concessioners have been performing under the contract for several years and, at this stage in the litigation, have interests in those contracts that diverge from the government's interest.

7

Finally, Eco Tour cites *Ervin & Associates, Inc. v. Dunlap*, 33 F. Supp. 2d 1 (D.D.C. 1997), which, as Eco Tour acknowledges, deferred a decision on joinder while certain threshold legal issues were litigated.   *Id.* at 13 (recognizing that "[t]hose contractors who stand to be deprived of contracts if Ervin prevails in his lawsuit are arguably within this definition [under Rule 19]" but that "the contract recipients have no part in resolving the constitutional and statutory dispute about the government's treatment of Ervin" that pertains to the threshold issue of liability). Rather than support Eco Tour, that case supports the government's position in not raising Rule 19 as a bar to litigating the issue of liability while raising the issue now that the case is at the remedy phase. Indeed, in its memorandum opinion, this Court cited *Ervin* when it distinguished between the liability and remedy phase by observing as to the former that "the purely legal question of whether NPS violated the APA may be resolved without requiring the joinder of the incumbent concessioners."   (Mem. Op. at 47).

Because the incumbent concessioners have a direct interest in the contracts that Eco Tour at this stage asks the Court to invalidate and award instead to Eco Tour, they are required parties under Rule 19(a)(1)(B)(i).   Although Eco Tour raises arguments on the question of whether the Court can accord complete relief among the existing parties (Rule 19(a)(1)(A)) and whether NPS would be subject to a substantial risk of inconsistent obligations (Rule 19(a)(1)(B)(ii)), the Court need not consider those alternative bases for "required party" status under Rule 19.   Nevertheless, for reasons discussed above, those alternative bases are satisfied when, as here, litigation is at the remedy phase and the plaintiff is requesting as relief the rescission of contracts held by absent third parties.

**B.  The Incumbent Concessioners Cannot Be Feasibly Joined**

Although the incumbent concessioners are required parties, they cannot be joined under Rule 19 because they are not "subject to service of process" in this Court due to a lack of personal jurisdiction.   *See, e.g.*, *DMP Corp. v. Rederiaktiebolaget Nordstjernan*, No. 82-1877, 1983 U.S. Dist. LEXIS 17714, at *12 (D.D.C. Apr. 14, 1983) (finding that joinder was infeasible due to the court's lack of personal jurisdiction over the absent party).   Eco Tour acknowledges that the incumbent concessioners are located and are incorporated in Wyoming, and that Eco Tour "is unaware of the incumbents having any presence in or contacts with the District of Columbia sufficient to form the basis for this Court having personal jurisdiction over the incumbents."   (Pl. Supp. Mem. at 7)   The contracts at issue, moreover, were issued out of the agency's regional office in Colorado and are performed in Wyoming.   (Parker Decl. ¶¶ 6-7)   Accordingly, there is nothing in the record before the Court to suggest that it would have personal jurisdiction over the incumbent concessioners, and Eco Tour appears to concede that the Court in fact lacks such jurisdiction.

When a required party cannot be joined because of a lack of personal jurisdiction, the Court must consider under Rule 19(b) whether in "equity and good conscience," the action should proceed among the existing parties or should be dismissed.   The factors for the Court to consider are set forth in Rule 19(b) and include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for

nonjoinder.   *See* Fed. R. Civ. P. 19(b).   "These four factors are not rigid but rather 'guides to the overarching 'equity and good conscience' determination.'"   *Ali v. Carnegie Inst. of Wash.*, 306 F.R.D. 20, 27 (D.D.C. 2014).

As already addressed above, the first factor weighs in favor of dismissing this action because a judgment by this Court altering the status quo – by, for instance, invalidating the contracts and remanding the matter to the agency for further proceedings (or, as plaintiff proposes, going further and actually awarding the contracts to Eco Tour) – would prejudice the incumbent concessioners.   That prejudice, moreover, is not mitigated by the failure of the incumbent concessioners to intervene in this litigation.   The D.C. Circuit has held, for instance, that a "[f]ailure to intervene is not a component of the prejudice analysis where intervention would require the absent party to waive sovereign immunity."   *Kickapoo,* 45 F.3d at 1498.   Likewise, under the same rationale, the failure to intervene should not be considered in the prejudice analysis where intervention would require the absent party to waive personal jurisdiction, which is an equally significant protection grounded in due process. *See Wichita & Affiliated Tribes v. Hodel,* 788 F.2d 765, 777 (D.C. Cir. 1986) (rejecting an interpretation of Rule 19 that would place an absent party in the "Hobson's choice" between waiving a jurisdictional defense or "waiving its right not to have a case proceed without it").[3]

---

[3]    *Wichita & Affiliated Tribes* distinguished between a "procedural defect such as venue" and a fundamental principle like sovereign immunity "that society has consciously opted to" recognize as a "shield . . . from suit."   *Id.* at 777.   Likewise, the concept of personal jurisdiction is grounded in the due process provisions of the Constitution, and thus, is an equally significant and fundamental protection.

The second factor also weighs in favor of dismissal.   In light of the nature of the relief requested by Eco Tour, the prejudice to the incumbent concessioners also could not be lessened in any meaningful way by protective measures and, indeed, Eco Tour has proposed none.   In analyzing the second factor, the D.C. Circuit in *Witchita & Affiliated Tribes* drew a distinction between a case where "[t]here *may* be more than enough pie to satisfy all of the claims" with a situation where "the parties' interest is in a specified *percentage* of the pie, and the combined requests of the parties exceed 100% of the pie, [such that] the court cannot afford one relief without affecting the rights of the others."   *Id.* In the latter case, which is analogous to the situation presented here, "the claims are mutually exclusive, and the problem of indispensability of an absent party is accentuated."   *Id.*   Here, the contracts at issue have a ten-year term that began in approximately July 2014.   Thus, even if the Court as a protective measure were to defer the implementation of any proposed remedy for a period of months, the incumbent concessioners under that scenario still would have their rights impacted.   As in *Kickapoo,* "in view of the relief sought by [plaintiff], 'there is no way the court can avoid the prejudice.'"   *Kickapoo,* 45 F.3d at 1498.

As a result of the prejudice to the incumbent concessioners, and the inability to meaningfully mitigate that prejudice, this Court "has grounds to dismiss the complaint for failing to join an indispensable party without consideration of any additional factors."   *Id.*   But even were the Court to consider those additional factors, they still fail to shift the balance against dismissal.   The third factor – whether a judgment rendered in the absence of the incumbent concessioners would be adequate – is arguably met here because the Court has authority under the APA to vacate the award decisions that it has declared unlawful.   Although defendants maintain

11

that the Court cannot go as far as Eco Tour proposes in directing the award of the contracts to Eco Tour, that derives from the agency's position that a contract award is a matter of discretion reserved to the agency in making contracting decisions.   This factor, however, "cannot be given dispositive weight when the efficacy of the judgment would be at the cost of the absent parties' rights to participate in litigation that critically affects their interests."   *Wichita & Affiliated Tribes,* 788 F.2d at 777.

The fourth factor, moreover, weighs in favor of dismissal.   Plaintiff would appear to have access to another forum where joinder of the incumbent concessioners would be possible, specifically, the federal district court in Colorado (the location of the NPS region that issued the contracts) or the federal district court in Wyoming (where the contracts are being performed and the incumbent concessioners maintain their principal place of business).   The statute of limitations to bring APA claims, moreover, is six years and, therefore, has not yet expired.   *Harris v. FAA*, 353 F.3d 1006, 1009 (D.C. Cir. 2004).

For all of these reasons, at this stage of the litigation, this case should be dismissed without prejudice for failure to join indispensable parties pursuant to FRCP 19.

## II.  Remedy In The Event The Court Declines To Dismiss This Action

Defendant previously argued that Eco Tour had elected its remedy of bid preparation costs and that, as a result, no further remedy is appropriate.   *Delta Data Systems Corp. v. Webster,* 744 F.2d 197, 207 (D.C. Cir. 1984) (disappointed bidder has the "option, if it so desires, of obtaining its reliance costs *instead of* its expectations").   Defendant further argued that, under the circumstances presented, the Court should exercise its "discretion . . . to decline to consider the prayer for injunctive relief, and to leave the bidder solely to his damages remedy." *M. Steinthal &*

*Co., Inc. v. Seamans,* 455 F.2d 1289, 1302 (D.C. Cir. 1970); *see also United Pacific Ins. Co. v. United States*, 464 F.3d 1325, 1332 (Fed. Cir. 2006) ("'invalidation of the contract is not a necessary consequence when a statute or regulation has been contravened'").   Defendants continue to maintain that position.   However, the Court appears to have determined that some form of relief is warranted beyond the status quo, and has directed the defendants to address what additional relief might be appropriate (even if not the relief defendants have urged).   Accordingly, without waiving defendants previously asserted position, defendants respond as follows to the Court's April 18, 2017, order.

To the extent the Court believes that maintaining the status quo is not sufficient, the Court should proceed as is typical in an APA case and vacate the challenged decisions and remand the matter to the agency for further proceedings.   Under the circumstances here, that would involve invalidating the existing concession contracts, and then leaving to the agency's discretion the determination as to how to proceed with respect to providing the public with the guided cross country ski touring services that are the subject of the two contracts. Under the applicable regulations, the agency could decide to re-solicit the contracts and, while that potentially time consuming process is effectuated,[4] use its authority under 36 CFR § 51.24 to make a temporary

---

[4]      The re-solicitation and award process is time consuming because it typically involves allowing for a time period of no less than 60 days for the submission of proposals, 36 C.F.R. § 51.10; time for a panel to evaluate the determined merits of the proposals received under the applicable selection factors and in comparison to each other and assign a cumulative point score, 36 C.F.R. § 51.16; time to create a written document for the administrative file memorializing the evaluation panel's evaluation and recommendation for award; time for the appropriate official to review the panel's evaluation and make a decision regarding selection; time to  incorporate the better terms and conditions of the best proposal into the concession contract, 36 C.F.R. § 51.19; time to send the concession contract to the selected offeror for execution within a certain timeframe; and, if returned on time, award the concession contract, 36 C.F.R. § 51.22.   (Parker

award to avoid any disruption in service.   Or the agency could determine to allow the provision

of these touring services to cease temporarily while the re-solicitation occurs, or ultimately decide

not to solicit contracts for these services.[5]

All of these options are discretionary.   Under 36 C.F.R. § 51.20, the Director of NPS has

the authority "at any time to determine whether to solicit or award a concession contract, to cancel

a solicitation, or to terminate a concession contract in accordance with its terms."[6]   Under section

51.24, moreover, "[t]he Director may non-competitively award a temporary concession contract

or contracts for consecutive terms not to exceed three years in the aggregate . . . to any qualified

person for the conduct of particular visitor services in a park area if the Director determines that

the award is necessary to avoid interruption of visitor services."   *See also* 36 C.F.R. § 51.11

(affording the Director discretion to amend, extend or cancel a prospectus or solicitation).

Because a determination of how to proceed would be within the agency's discretion, in the

event the contract awards are invalidated by the Court, it is defendants' position that the Court

cannot compel the government to take any particular action once the contracts have been rescinded.

*See, e.g., Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 63-64 (2004) (APA "empowers a

---

Decl. ¶ 9)

5       With respect to the Court's inquiry as to the applicability of any right of preference in a re-solicitation (Mem. Op. at 51), defendants observe that, if the existing contracts are rescinded, the parties would revert back to the position that they held prior to the contract award – that is, the same position they would have held had the agency opted to re-solicit the contracts following the Court of Federal Claims' decision.   Whether the incumbents would retain preferred offeror status in any re-solicitation would be governed by applicable regulations, including 36 C.F.R. § 51.35.

6       The concession contracts at issue do not include termination for convenience clauses and limit the circumstances pursuant to which the agency can terminate an existing contract.   (Parker Decl. ¶ 4)

court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act'").   Accordingly, the Court should leave to the agency's discretion how to proceed in the event the Court invalidates the existing contracts. *See, e.g., Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994) ("the trial court did not order the award of the contract to [the plaintiff]. Instead, the trial court properly enjoined the illegal action and returned the contract award process to the status quo ante any illegality."), 1154 (clarifying that although it was upholding this Court's injunction overturning the cancellation of a solicitation, "the Government retains the power to proceed with its award process or to terminate the award process for any legal reason."); *1st Line Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 401-03 (Ct. Fed. Cl. 2011) ("What course of action TSA chooses to pursue after contract award is cancelled in order to maintain security screening services at MCI is not for this court to decide.").

Defendants thus object to Eco Tour's proposal requesting an order from the Court that not only vacates the decision to award the contracts to the incumbent concessioners but directs that the contracts be awarded to Eco Tour with a new ten year term.   The D.C. Circuit has stated that a court should not order an award of a contract "unless it is clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order award." *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 204 (D.C. Cir. 1984).   "Where 'there is nothing in the record to *guarantee* that [the plaintiff] would have received the . . . contracts . . . , there are . . . no grounds . . . to vacate the awards of those contracts to other contractors and grant them to [the plaintiff].'"   *Id.* (emphasis added).   *Delta Data Systems* does not preclude an order vacating an award of a contract with a remand to the agency for further proceedings, but does suggest that

15

an order directing that the agency award the contract to another party would not be appropriate in such cases.   Doing so also would conflict with the Supreme Court's subsequent decision in *Norton*, *supra*.

Here, there was no "guarantee" that Eco Tours would have received the contract following the decision of the Court of Federal Claims deeming the incumbents' proposal non-responsive. As this Court acknowledged in its memorandum opinion, NPS could have re-solicited bid proposals and started the process over.   (Mem. Op. at 30, stating that "[t]he CFC's correction of the NPS's erroneous treatment of the incumbents' proposals triggered the statutory and regulatory requirement of rejection of those proposals and presented the NPS with two alternatives: either award of the contracts to plaintiff, as the best offeror, or re-solicitation of bid proposals.")   Eco Tour conceded that point as well when it stated in its filing that:   "As a result of the CFC's decision, NPS had two legal options going forward: (1) award the contracts to Eco Tour; or (2) cancel the solicitation."   (ECF No. 28 at 11 n. 2)   The Court's observation, and Eco Tour's concession, are both consistent with the discretion afforded to the Director under 36 CFR §§ 51.11 and 51.20.

In light of sections 51.11 and 51.20, the concession by Eco Tour and other circumstances of this case, this situation is distinguishable from *Superior Oil Co. v. Udall,* 409 F.2d 1115 (D.C. Cir. 1968), where the D.C. Circuit upheld a district court decision directing the award of an oil and gas lease to the second highest bidder after determining that the Secretary lacked authority to accept an unsigned bid that was higher.   *Id.* at 1121-22.   The D.C. Circuit found the option of re-solicitation to be inequitable because it "would allow Union, whose error has created this problem, to have a second opportunity to bid against Superior and all other bidders" and upheld the district

court's award of the lease to the second highest bidder notwithstanding the Secretary's discretion under the applicable statute to "authorize" such leases.   *Id.*

Here, in contrast, Eco Tour has acknowledged that, following the Court of Federal Claims decision, the agency could have re-solicited bid proposals and started the process again.   (ECF No. 28 at 11 n.2)   Doing so at that time, moreover, would not have been inconsistent with the then-existing state of affairs because the Court of Federal Claims – Eco Tour's chosen forum – had awarded Eco Tour bid preparation costs as its sole remedy in that forum for the procedural violation in the bidding process.   It also would have been consistent with section 51.11, which, unlike the applicable provision in *Superior Oil Co.*, expressly permits the Director to amend, extend or cancel a solicitation at any time prior to "award of the concession contract,"[7] and section 51.20, which affords the Director discretion to make solicitation decisions.   Accordingly, *Superior Oil Co.* is distinguishable and does not preclude the remedy that the government is proposing.

*Superior Oil Co.* also predates the Supreme Court's decision in *Norton* and thus is of questionable validity.   Indeed, the D.C. Circuit appears to have last cited *Superior Oil Co.* in a decision that pre-dates *Norton.   See, e.g., Biltmore Forest Broad. FM, Inc. v. FCC,* 321 F.3d 155, 176 (D.C. Cir. 2002) (distinguishing *Superior Oil Co.* on other grounds).   It is not clear that it is ever permissible for a court to award a government contract to a plaintiff, but it is certainly not permissible under the circumstances presented here.

---

7      The term "award" in that context refers to the issuance of a contract after execution of the contract by the offeror, *see* 36 C.F.R. § 51.22, which did not occur here until July 2014.   *See also* 36 C.F.R. § 51.3 (defining "award" as "occur[ring] only when the Director and a selected offeror both fully execute a concession contract").

However, in the event the Court accepts Eco Tour's proposed remedy over defendants' objection, Eco Tour should be required to repay the $36,250 in bid preparation costs that it previously received as a pre-condition of the Court rescinding the existing contracts and awarding them to Eco Tour.  Eco Tour does not contend that it lacks the financial ability to make that payment at the outset of any such contract and, indeed, acknowledges that it can do so "if required by the Court."  (Pl. Supp. Mem. at 16)

As directed by the Court, accompanying this supplemental memorandum are alternative proposed Orders that reflect (a) defendants' position on the indispensable party issue and (b) defendants' position on proposed remedy in the event the Court does not dismiss this action for failure to join indispensable parties under Rule 19.   The latter proposed Order is being submitted subject to, and without waiver, of defendants' position that the appropriate remedy is to maintain the status quo and that this action should be dismissed at this stage for failure to join indispensable parties.

Respectfully submitted,

CHANNING D. PHILLIPS
D.C. Bar # 415793
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

By: _____/s/_____
JEREMY S. SIMON
D.C. BAR #447956
Assistant United States Attorney
555 Fourth Street, N.W.

18

Washington, D.C.   20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

Attorneys for Defendants