UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ECO TOUR ADVENTURES, INC.,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | Civil Action No. 14-2178 (BAH) |
| ) | |
| RYAN ZINKE, *in his official capacity as*      ) | |
| *Secretary of the Interior, et al.*,      ) | |
| ) | |
| Defendants.      ) | |
| ) | |

**PLAINTIFF'S REPLY TO
DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN RESPONSE TO THE
COURT'S ORDER OF APRIL 18, 2017**

Respectfully submitted,

 /s/ Kevin R. Garden
Kevin R. Garden, DC Bar No. 426745
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
Tel.:  (703) 535-5565; Fac.: (703) 997-1330
Counsel for Plaintiff
Eco Tours Adventures, Inc.

Dated:  June 28, 2017

**Table of Contents**

I.　　Introduction ................................................................................................. 1

II.　　NPS effectively concedes that the Court can accord complete relief in this case without the incumbent concessioners. ................................................. 2

III.　　NPS is not subject to a substantial risk of inconsistent obligations ........................... 2

IV.　　As a result of the Court's determinations of law, the incumbent concessioners no longer have any valid interest in the contracts because the award decisions must be set aside as a matter of law. ................................................. 3

V.　　Even if the incumbents are found to be necessary parties, NPS omits the facts which show that the case should proceed in equity and good conscience. ........................................................................................... 5

VI.　　NPS's request that the Court remand the matter to the agency will only give NPS yet another opportunity to violate the law and hand the contracts over to its favored incumbent concessioners .................................................. 10

VII.　　NPS does not show that this Court lacks the authority to direct awards. .................. 13

VIII.　　The vague email from Hole Hiking does not help evaluate the balance of equities or show that a directed award is inappropriate. ........................................... 14

IX.　　Conclusion ............................................................................................. 16

# Table of Authorities

## _Cases_

_Alabama Rural Fire Insurance Co. v. United States_, 572 F.2d 727 (Ct. Cl. 1978) ............... 4

_Delta Data Sys. Corp. v Webster_, 744 F.2d 197 (D.C. Cir. 1984) ...................................... 13

_Eco Tour Adventures, LLC v. United States_, 114 Fed. Cl. 6 (2013) ................................... 15

_Fort Yates Pub. Sch. Dist. No. 4 v. Murphy ex rel. C.M.B._, 786 F.3d 662 (8th Cir. 2015) ... 6

_Knox v. U.S. Dept. of the Interior_, 759 F. Supp. 2d 1223 (9th Cir. 2010) ............................. 4

_Lebouef, Lamb, Greene & MacRae, L.L.P. v. Abraham_,
    347 F.3d 315 (D.C. Cir. 2003) ................................................................................. 13

_Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs_,
    900 F. Supp. 2d 8 (D.D.C. 2012) ............................................................................ 10

_Nanko Shipping USA v. Alcoa, Inc._, 850 F.3d 461 (D.C. Cir. 2017) .................................. 6\

_Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund_,
    582 F.3d 30 (1st Cir. 2009) ..................................................................................... 6

_National Licorice Co. v. NLRB_, 309 U.S. 350 (1940) ......................................................... 7

_Provident Tradesman Bank & Trust Co. v. Patterson_, 390 U.S. 102 (1968) ................. 7, 10

_Samson Tug & Barge Co. v. United States_, 695 F. Supp. 25 (D.D.C. 1988) ...................... 15

_Superior Oil Co. v. Udall_, 409 F.2d 115 (D.C. Cir. 1969) ................................................. 12

_Swomley v. Watt_, 526 F. Supp. 1271 (D.D.C. 1981) ........................................................ 6, 7

_Ulstein Maritime, Ltd. v. United States_, 833 F.2d 1052 (1st Cir. 1987) ............................. 12

_United States v. Exxon Corp._, 94 F.R.D. 252 (D.D.C. 1981) .............................................. 8

_United States v. Ytem_, 255 F.3d 394 (7th Cir. 2001) ......................................................... 14

_United States Fire Insurance Company v. Milton Company_,
    938 F. Supp. 56 (D.D.C. 1996) ................................................................................ 9

_Wichita & Affiliated Tribes of Oklahoma v. Hodel_, 788 F.2d 765 (D.C. Cir. 1986) ............. 9

*Wolcott v. Ginsburg*, 746 F. Supp. 1113 (D.D.C. 1990)..........................................................9

*Statutes and Regulations*

5 U.S.C. § 702...................................................................................................................4

36 C.F.R. § 51.31 ........................................................................................................10, 13

I.      **Introduction**

The National Park Service (NPS) now insists that the agency's two incumbent concessioners are necessary parties and, because they have chosen not to intervene, the Court should exercise its discretion under Rule 19 and dismiss this entire case.  NPS Supp. Mem. at 2. However, the position which NPS urges this Court to take is not equitable nor in good conscience, which is the definitive standard, and puts NPS's and the incumbents' interests before the public interest.  NPS's violation of law was clear and flagrant.  It also violated an explicit Congressional goal.  The outcome NPS now urges would result in NPS and its incumbent concessioners once again getting away with this calculated decision to violate the law.  This outcome is indisputably very much contrary to the public interest, inequitable and unconscionable.  Moreover, NPS's legal arguments are without merit because this case is based on repeated flagrant violations of federal law by a federal agency, does not involve sovereign entities and is not the rare situation where the Court should exercise its discretion to dismiss a case under Rule 19.  Instead, this case is precisely the situation where the Court's oversight role is desperately needed to direct a federal agency to, once and for all, follow its own extremely clear regulations.

NPS had one last chance with its supplemental memorandum to demonstrate that it understood what the law requires based on the facts and finally agree that the contracts at issue should be awarded to Eco Tour.  Yet it did not.  What is most striking about the agency's memorandum is that, while it insists the Court should not direct award of the contracts, it provides no factual basis whatsoever for any other outcome.  Eco Tour's proposal was the best one, the preferred concessioners submitted non-responsive proposals and the agency agrees concession contracts must be issued for the solicited services.  The law is very, very explicit that,

1

in the present situation, the contracts "will" be awarded to Eco Tour.  The agency's incorrigible resistance to complying with the law shows why the Court must direct the agency to follow its own regulations and award the contracts because, unless required to do so, the agency will clearly violate the law again and find a way to keep the illegal *status quo* it so strongly desires. For these reasons, equity and good conscience strongly support directing the agency to award the two contracts at issue.

## II.     NPS effectively concedes that the Court can accord complete relief in this case without the incumbent concessioners.

NPS provides no substantive basis for its assertion that the first criteria under Rule 19(a)(1)(A) for a party being necessary is met in this case.  NPS Supp. Mem. at 8.  In the instant case, the Court has full authority over the subject matter at issue, the propriety of a federal agency's decisions to award federal contracts, and therefore can accord complete relief.  Fed. R. Civ. P. 19(a)(1)(A).  NPS claims that the Court somehow lacks this ability as to the relief, but provides no explanation for this assertion.  NPS Supp. Mem. at 8.  As the Court held, "the Court has the power to direct the award of the contracts, should plaintiff be found entitled to such relief."  Mem. Op. at 36, n. 12.

## III.     NPS is not subject to a substantial risk of inconsistent obligations.

NPS also provides no substantive basis for its assertion that the third criteria under Rule 19(a)(1)(B)(ii) for a party being necessary is met in this case.  NPS Supp. Mem. at 8.  This Court has full authority to invalidate the contracts.  Therefore, the Court's ruling will not subject NPS to "inconsistent" obligations because NPS cannot be at risk of being forced to meet two separate obligations.  While NPS claims that it has this risk, it provides no substantive explanation for this assertion.  NPS Supp. Mem. at 8.

Therefore, NPS's argument hinges on its assertion that the incumbent concessioners meet the test for a necessary party under Rule 19(a)(1)(B)(i).

**IV.    As a result of the Court's determinations of law, the incumbent concessioners no longer have any valid interest in the contracts because the award decisions must be set aside as a matter of law.**

As to Rule 19(a)(1)(B)(i), NPS agrees with the Court and Eco Tour that the incumbent concessioners were not necessary parties for purposes of determining the legality of the award decisions under the APA because NPS adequately represented their rights.  NPS Supp. Mem. at 5 (the case focused on a statutory dispute that did not implicate the rights of the incumbents). NPS, however, incorrectly argues that this case was separated into two phases, and NPS cannot adequately represent the incumbents' interests in the alleged second phase of the case.  *Id*. at 4, 6 (this case had a "liability stage" and a "remedy" stage, and NPS's interests "no longer overlap" with the incumbents' interests).[1]  NPS argues that the incumbents are therefore necessary parties with respect to the Court's determination in the alleged "second phase" of the proper injunctive relief under Rule 19(a)(1)(B)(ii) because they still have "an interest relating to the subject of the action" which NPS is not representing and resolution of the case may impair or impede their ability to protect that interest.  *Id*. at 3-4.  NPS's argument, however, is wrong because, if this case involved two phases, the incumbents, as a matter of law, no longer have an interest in the

---

[1] NPS incorrectly claims that it did not assert the incumbent concessioners were necessary parties in this case pursuant to the motions for summary judgment because the case was only in the liability phase.  NPS Supp. Mem. at 5.  However, this case was never separated into a liability and remedy phase.  Eco Tour's motion for summary judgment explicitly sought relief of directed awards of the contracts and explained why it met the requirements for this relief.  *See* ECF No. 24 (motion for summary judgment seeking directed award of contracts).  NPS vigorously objected to this relief without ever asserting the incumbents were necessary parties.  *See* ECF No. 26 at 18-26 (NPS objected to directed award as the appropriate relief).  Thus, NPS's explanation for its delay is false and it clearly never believed that the incumbent concessioners were necessary parties.  Its current position, therefore, is purely opportunistic.

contracts in the second phase.  *Id*. at 4.  As NPS admits, the Court found in the alleged first phase that NPS violated the APA.  As a result, the contract award decisions must be set aside as a matter of law.  5 U.S.C. § 706(2)(A).  This legal outcome eliminates any interest the incumbents may have had in the subject matter of the case, and thus they do not meet the criteria under Rule 19 for necessary parties.[2]

Pursuant to the APA, the legal result of the determination by the Court that NPS violated the APA is that the agency's decision must be set aside.  5 U.S.C. § 706(2)(A)("The reviewing court <u>shall</u> [] hold unlawful and set aside agency action, findings, and conclusions found to be [] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law")(emphasis added).  The explicit mandate of the law leaves no discretion as to this result.  The agency's action at issue was the decision to award the contracts.  Therefore, this action to award the contracts must be set aside.  As a result, the contracts are no longer valid.[3]  If not, the second part of the Congressional requirement in the APA to both (1) declare the action unlawful and (2) set it aside would be essentially meaningless.  Moreover, NPS admits that the incumbents were not necessary parties as to this determination of the legality of NPS's decision.  Mem. Op. at 47 ("the purely legal question of whether NPS violated the APA may be resolved without requiring the joinder of the incumbent concessioners"); NPS Supp. Mem. at 4 ("the liability phase of this matter [] is now over").  As NPS appears to agree, the validity of the agency's decision "under the APA must stand or fall based on the [agency's] defense" of those decisions.  *See Knox v. U.S. Dept. of the Interior*, 759 F. Supp. 2d 1223, 1237 (9th Cir. 2010)(finding States not necessary

---

[2] The incumbents could have nonetheless intervened and fully participated in this case under Fed. R. Civ. P. 24, but chose not to do so.

[3] *See Alabama Rural Fire Insurance Co. v. United States*, 572 F.2d 727, 733 (Ct. Cl. 1978)(court is required to strike down illegal government contracts).

parties even though decision invalidated their compacts because the core legal issue was defended by the federal government).

Given this fact, NPS's argument that the incumbent concessioners still have a legal interest that may be impaired or impeded by the Court's decision as to whether those contracts should thereafter be awarded to Eco Tour assumes the incumbents still have a legal right related to those contracts.  NPS points to no other right or interest by the incumbents.  The incumbents, however, have no such contract rights because the contracts must be set aside as a matter of law. Therefore, the incumbents cannot claim a legal interest relating to the subject matter of this phase of the case (*i.e.*, whether the agency should award the set aside contracts to Eco Tour) that would be impeded or impaired by disposing of this case in their voluntary absence.  Thus, the incumbents are not necessary parties because the remaining determinations by the Court as to whether the agency should be directed to award the contracts to Eco Tour as required by law do not impair any interests of the incumbent concessioners.

**V.      Even if the incumbents are found to be necessary parties, NPS omits the facts which show that the case should proceed in equity and good conscience.**

Under Rule 19, even if a party is found to be necessary, the final decision as to whether the case should proceed is based on this Court's discretion as to whether the case should proceed in equity and good conscience.  Fed. R. Civ. P. 19(b).  In its supplemental memorandum, NPS completely ignores the facts of this case which clearly show that this standard is met.  Instead, NPS focuses exclusively on the self-interest of its incumbents but not on Eco Tour's or the public's interest.  NPS then incredulously asserts that equity and good conscience dictate that this Court should let NPS get away with a blatant and deliberate violation of law so that its

incumbents can keep their illegal contracts.[4]   However, as this Court held in *Swomley v. Watt*, 526 F. Supp. 1271, 1273 (D.D.C. 1981), the Court must weigh the possible prejudice and inadequacy of a judgment to <u>both</u> parties.   Overall, the impacts on both parties and the public interest very much support proceeding with this case in equity and good conscience.

While NPS focuses solely on the alleged impairment of the incumbents' ability to protect their alleged interests as its basis for claiming this case must be dismissed, NPS ignores the Court of Appeals' recent holding in *Nanko Shipping USA v. Alcoa, Inc.*, 850 F.3d 461, 465 (D.C. Cir. 2017), cited in Eco Tour's memorandum, which emphasized that cases should only rarely be dismissed pursuant to Rule 19.

> Rule 19 does not apply merely because dispute resolution would be more efficient with the nonparty's participation, nor because the pending case could yield precedent adverse to the absentee's interests. A decision under Rule 19 "*not to decide*" a case otherwise properly before the court is a power to be exercised only "[i]n rare instances." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 42 (1st Cir. 2009); *see also Fort Yates Pub. Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 671 (8th Cir. 2015).

*Id*. at 464-465 (emphasis added).   Nowhere in its supplemental memorandum does NPS explain why the instant case qualifies as one of the "rare" instances a court should dismiss a case pursuant to Rule 19.   In fact, <u>all</u> of the cases NPS cites in its memorandum involve the distinctly different situation of the necessary party being a state or sovereign nation which implicates the unique issue of sovereign immunity.   NPS Supp. Mem. at 10-12.   Contrary to NPS's assertion, the incumbent concessioners are not like sovereign nations, and thus the often compelling reason of protecting an entity's sovereign immunity does not exist in this matter.   *Id*. at 10, n. 3

---

[4] As this Court noted, NPS is urging the Court to be satisfied with the agency having "executed the disputed contracts in flagrant disregard of the judicial finding that the bidding process was flawed and illegal as well as its own governing statute and regulations. . . ," and send a message to agencies that they can do so with "virtual impunity." Mem. Op. at 49.

(claiming that lack of personal jurisdiction over a United States citizen is the same as sovereign immunity).  The Court also held that "it is well settled that even when a party might otherwise be indispensable, joinder is not required where the plaintiff seeks to vindicate public rights." *Swomley,* 526 F. Supp. at 1273*, citing National Licorice Co. v. NLRB*, 309 U.S. 350 (1940).  Eco Tour's lawsuit is akin to cases vindicating public rights given that it seeks to force the agency to follow the law and adhere to the Congressional goal of opening up competition.  *See* Mem. Op. at 21 ("The Act plainly disfavors giving preferential renewal rights to incumbents").

Also of note, in its supplemental memorandum NPS ignores the interests set out by the Supreme Court in *Provident Tradesman Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109 (1968), which Eco Tour has shown support not dismissing this action at this late stage.  Eco Tour Supp. Mem. at 8-10.  Instead, NPS focuses exclusively on the four factors set out in Rule 19(b), even though NPS admits that these factors are not dispositive nor rigid, and that the dispositive criteria for the Court's discretionary decision is determining what is appropriate in equity and good conscience.  NPS Supp. Mem. at 10 (admitting the four factors are not rigid).  As shown below, NPS has not demonstrated that equity and good conscience support dismissal of this case at this very late stage given that: NPS never raised this argument earlier; Eco Tour likely could not obtain injunctive relief given the passage of time since this case was filed; the incumbents were notified of the Court's findings and given an opportunity to intervene; this case involves a blatant agency violation of clear law as well as clear Congressional direction; and the public interest is indisputably being protected by requiring the agency to adhere to both its own regulations and federal statutes.  Given that the incumbent concessioners are not being asked to waive their sovereign immunity, as was the situation in the cases cited by NPS, NPS's insistence

that this case is the rare instance of a case that should be dismissed so that it can continue with its demonstrably illegal conduct is not persuasive.

As to the first non-rigid factor set out in Rule 19(b)(1) regarding the extent a judgment might prejudice a party who has not intervened in a case, as noted above, NPS says the incumbent concessioners are like sovereign nations and requiring them to waive personal jurisdiction by this particular District Court, as opposed to their local federal district court, is akin to asking a sovereign nation to allow a United States court to have personal jurisdiction over it.  NPS Supp. Mem. at 10 (requiring the incumbents to intervene is akin to asking a sovereign nation to waive its immunity).  NPS provides no further analysis supporting this extraordinary assertion, and only cites to cases actually involving sovereign entities.  *Id.*  None of those cases set out the assertion NPS now makes.  Furthermore, as noted above, the contract award decisions at issue must be set aside under the law.  Therefore, there is no prejudice to any contract rights the incumbents used to have because those rights are now eviscerated.  Notably, the incumbents also are clearly aware of this litigation, including the finding under the APA, and have not intervened to minimize any prejudice to their interests.  *See United States v. Exxon Corp.*, 94 F.R.D. 252, 259 (D.D.C. 1981)(as to possible prejudice, "it is significant that [an opportunity] has been extended to the [missing parties] to intervene in this litigation; it is within these [parties'] power to protect any interest they may have in this litigation").

As to the second non-rigid factor under Rule 19(b)(2) which involves the ability of the Court to mitigate any prejudice, no mitigation is necessary because no legal rights were prejudiced as discussed above based on the mandate under the APA.  In addition, the incumbents' decisions not to intervene are also relevant to the question of equity and good conscience.  This Court's efforts to ensure that the incumbents were aware of their ability to

intervene in this case is an "other measure" under Rule 19(b)(2)(c) that has been taken to lessen any prejudice to them.  As Eco Tour previously noted, but NPS ignores, this Court held in *United States Fire Ins. Co. v. Milton Company*, 938 F. Supp. 56, 58 (D.D.C. 1996) that a necessary party's decision not to become a party to the case is "dispositive of the 'equity and good conscience' test."  *See id.* at 57 ("Applying Rule 19(b)'s second test, however, the prejudice can be avoided by the [missing party's] re-intervention, and that is a matter that is within the [party's] own control").

The third factor under Rule 19(b)(3) falls squarely in favor of not dismissing the case at this late stage because, as even NPS admits, an adequate judgment can rendered in the absence of the incumbent concessioners.  *See Samson Tug & Barge Co. v. United States*, 695 F. Supp. 25, 28 (D.D.C. 1988)(finding case should proceed based solely on ability of court to issue an adequate judgment).

The fourth factor under Rule 19(b)(4) also falls in favor of not dismissing this case because Eco Tour is not likely to have an adequate remedy if this case were dismissed.  *See Wolcott v. Ginsburg*, 746 F. Supp. 1113, 1121 (D.D.C. 1990)("A court should be extra cautious in dismissing a case for nonjoinder where the plaintiff 'will not have an adequate remedy elsewhere'"), *quoting Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986).  NPS already asserted that the six month delay in filing this lawsuit precluded injunctive relief.  ECF No. 26 at 23-26 (NPS argued that Eco Tour's delay in seeking injunctive relief precluded that remedy because even waiting 44 days is waiting too long).  At this late stage of this litigation, if this case were dismissed and Eco Tour had to bring this action in the Wyoming district court, Eco Tour would be seeking injunctive relief over 3 ½ years after the Court of Federal Claims action was filed.  NPS would obviously cite the same cases it previously

did to the district court and argue that this passage of time prevents Eco Tour from seeking injunctive relief and that NPS would be able to continue with the illegal contracts.  Thus, Eco Tour would not have an adequate remedy.[5]  This fact, therefore, strongly supports continuing with this matter.

**VI.    NPS's request that the Court remand the matter to the agency will only give NPS yet another opportunity to violate the law and hand the contracts over to its favored incumbent concessioners.**

NPS incorrectly states that this a "typical" APA case that merits a "typical" APA remedy of remand.  NPS Supp. Mem. at 13.  However, this case is not typical for two reasons.  First, the applicable law is exceptionally explicit based on the facts.  *See* Mem. Op. at 36, n. 12 (the Court recognized that the facts in this case show that, but for NPS's illegal conduct, the contracts would have been awarded to Eco Tour).  Under the applicable law and the facts, and because NPS has clearly decided to continue with these visitor services, NPS must award the contracts to Eco Tour.[6]  While NPS states that the Court should invalidate the contracts and then "leav[e] to the agency's discretion as to how to proceed," there is no other option under the law for proceeding given that Eco Tour's proposal was the best one and the agency has decided to provide the services authorized under the contracts.  NPS Supp. Mem. at 13.[7]  Because the agency provides no reasons at all to engage in the admittedly expensive and "time consuming

[5] In addition, Eco Tour would be forced to re-start this litigation which would be extremely inefficient. S*ee Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs*, 900 F. Supp. 2d 8, 15 (D.D.C. 2013)("'the fact that time and expense of a trial have already been spent'" heavily weigh in favor of proceeding"), *quoting Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 111.

[6] 36 C.F.R. § 51.31 (if a preferred offeror fails to submit a responsive proposal, the contract "will be awarded to the offeror submitting the best responsive proposal").

[7] The fact that NPS still believes the Court should dismiss the action and allow the incumbents to continue to provide these services is conclusive proof that the agency has decided to continue with these services.

process" of re-soliciting the contract opportunity, any decision to re-solicit would be patently arbitrary and retaliatory. *Id*. at 13, n. 4 (re-soliciting is a "time consuming" process that involves a lot of additional agency expense).

The second reason this case is atypical is the agency's dogged determination to defy repeated federal court findings and not follow its own very clear regulations by awarding two federal contracts to non-responsive offerors instead of awarding them to Eco Tour.  As this Court noted, the Court of Federal Claims explicitly found that the incumbents' proposals were non-responsive and "the incumbents therefore were ineligible for the opportunity to match the better terms offered by [Eco Tour]."  Mem. Op. 10.  NPS completely disregarded this very explicit federal court ruling. *Id.* at 26 ("after the CFC found the incumbents' proposals to be non-responsive, NPS persisted on the path of awarding the disputed contracts to the incumbent concessioners, even though these awards were barred").  Instead, using "untenable" and "convoluted" reasoning, NPS went ahead with its goal of awarding the incumbents the contracts after allowing them to match Eco Tour's better terms. *Id*. at 20, 27.  This Court then re-affirmed the validity of the Court of Federal Claims' legal determination and found that the agency's award decisions violated the APA. *Id*. at 18.  Undeterred by this second determination, NPS continues to stand behind rejected arguments that would allow it to avoid awarding these contracts to Eco Tour.  NPS Supp. Mem. at 12 (notwithstanding this Court's repeated rulings, NPS continues to insist that Eco Tour elected a remedy and cannot be awarded the contracts at issue).

Furthermore, NPS has now made it clear that, if this matter is remanded and the contracts are re-solicited, NPS will once again give its incumbents the Congressionally-disfavored right of preference.  NPS Supp. Mem. at 14, n. 5 (upon any re-solicitation, "the

11

parties would revert back to the position that they held prior to the contract award").[8]  This outcome would be extraordinarily unfair given that the incumbents clearly failed to submit responsive proposals the first time around and now have been informed of all the better terms in Eco Tour's proposal.  This position by the agency shows beyond any doubt that the agency is bound and determined to keep these contracts in the hands of its preferred incumbents.  The only reason for re-soliciting would be to give the non-responsive incumbents a second chance to obtain the contracts, with them now fully aware of Eco Tour's better terms.  Moreover, NPS never addresses the case holdings which find that any such outcome would be inequitable.  *See Superior Oil Co. v. Udall,* 409 F. 2d 1115, 1122 (D.C. Cir. 1969) (upholding directed award, noting that "[i]t would be plainly inequitable to [plaintiff] and damaging to the long range public interest in the integrity of the bidding process to allow [the original awardee], whose error was created this problem, to have a second opportunity to bid against [plaintiff] and all other bidders"); *Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1058-1059 (1ˢᵗ Cir. 1987)(allowing a new competition after bids are disclosed would be unfair and frustrate the policies behind allowing *Scanwell* actions).[9]

    Given the demonstrated intractability of the agency and its transparent but wholly illegal determination to find some way to ensure it achieves its original goal of keeping these contracts

---

[8] As the Court noted, Eco Tour has been harmed by NPS's actions which would prevent Eco Tour from being a preferred offeror in the next round of solicitations for the contracts if Eco Tour complied with the law and submitted a responsive proposal.  Mem. Op. at 40.  NPS is now admitting that it will make sure Eco Tour effectively suffers this same harm if the case is remanded because NPS will once again give its incumbents this right of preference.

[9] While NPS never addresses this particular principle as set out *Superior Oil*, it claims that the facts in *Superior Oil* distinguish that case.  NPS Supp. Mem. at 16.  NPS's argument is difficult to follow, but appears to be based on its rehashing of its assertion that Eco Tour's receipt of bid preparation costs was a "sole remedy" that prevented it from being awarded the contract.  *Id*.  As this Court has noted, NPS continues to assert this thoroughly repudiated argument.

with its incumbents, this case is <u>exactly</u> the type of situation that merits the Court directing the agency to follow the law and award the contracts to Eco Tour.

**VII.   NPS does not show that this Court lacks the authority to direct awards.**

Contrary to NPS's continuing assertion that this Court cannot direct an award, the Court has already found that it has the authority under the APA to order the award of the two concession contracts at issue.  NPS Supp. Mem. at 3 (asserting that "the Court lacks authority under the APA to order the award of the two contracts").  As the Court held, it has that authority pursuant to the facts which exist in this case.  Mem. Op. at 36, n. 4 (*citing to Delta Data Sys. Corp. v Webster*, 744 F.2d 197, 206 (D.C. Cir. 1984), and *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Abraham*, 347 F.3d 315, 320 (D.C. 2003).  NPS also contradicts itself when it asserts that the Court cannot compel the agency to award the contracts, but then notes that the Court of Appeals has held that the Court can compel an agency to award a contract where it is "clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order award."  NPS Supp. Mem. at 15, *quoting Delta Sys. Corp. v. Webster*, 744 F.2d 197, 204 (D.C. Cir. 1984).

In the instant case, which provides the benefit of hindsight, there <u>is</u> a sufficient guarantee that Eco Tour would have received the contracts because it is now clear NPS was (and continues to be) determined to provide the services.  Given that decision, NPS had to award the contracts to Eco Tour under the law.  36 C.F.R. § 51.31.  NPS's assertion that NPS *might* have re-solicited if it had to reject the incumbents' proposals has absolutely no support in the record.  Moreover, NPS provides no basis for such an outcome even today, such as any improvements in its prospectus evaluation process since the original evaluations occurred.  In essence, NPS's claim that it is possible it might re-solicit for the contracts if it was not allowed to award the contracts

to its incumbents falls under the "anything is possible" category.  The truism that "anything is possible" does not justify a remand, especially in light of the undisputed facts and explicit law. *See, e.g., United States v. Ytem*, 255 F.3d 394, 397 (7th Cir. 2001)(in response to the party's position that anything is possible, the court noted that this argument was of no practical value because  "*Anything* is possible; there are no metaphysical certainties accessible to human reason; but a merely metaphysical doubt").  Moreover, NPS's suggestion that, even though it was all too willing to award the contracts to its lower-rated incumbents, it *might* want to incur the admittedly high costs of re-soliciting if it had to award the contracts to the highest evaluated offeror, Eco Tour, simply makes no sense and reeks of retaliation.  NPS Supp. Mem. at 16 ("NPS could have re-solicited bid proposals and started the process over" if it had to award the contracts to Eco Tour); *id*. at 13, n. 4 (admitting the lengthy and expensive process required for a re-solicitation).[10]

## VIII.   The vague email from Hole Hiking does not help evaluate the balance of equities or show that a directed award is inappropriate.

NPS attached an email to its supplemental memorandum from the owner of Hole Hiking, but that email does not show that the balance of equities favors Hole Hiking or that a directed award is inappropriate in this situation.  Declaration of Jennifer Parker at Page 4 of 5 (ECF No. 39-3).[11]  The email obviously is not a declaration and thus of no evidentiary weight.  While the declarant asserted that she was willing to provide testimony, it is unclear why she nor NPS

---

[10] The agency's position that Eco Tour return the $36,500 as a "pre-condition" for award of the contracts appears to be an effort to throw up one more hurdle that might prevent award of the contracts.  NPS Supp. Mem. at 3.  The agency offers no substantive basis for insisting this large sum be paid before the contracts can be awarded, nor any harm to the public fisc if it is paid along with the regularly scheduled first franchise fee payment.

[11] Apparently, the other incumbent, Jackson Hole Mountain Resort, never even bothered to send any response to NPS, demonstrating it likely has very little if any interest in the contract at issue.

actually provided a sworn declaration.  *Id*.  Moreover, the email lacks any specificity which makes it useless.

In the email, the owner of Hole Hiking vaguely asserts it purchased unidentified equipment and a vehicle for the NPS concession contracts.  Declaration of Jennifer Parker at Page 4 of 5 (ECF No. 39-3).  This claim, however, is inconsistent with Hole Hiking's prior assertion in its proposal that it would have no start-up costs.  *See Eco Tour Adventures, Inc. v. United States*, 114 Fed. Cl. 6, 29 (Hole Hiking stated that "it would not have any start-up expenses").  Moreover, Hole Hiking does not identify this equipment, quantify the cost of this equipment in any way or assert that this equipment is not used in its other operations.  *Id*.  Thus, these alleged costs are unknown.  They could be miniscule, they may have already been recouped or they may be benefitting other ongoing tour operations being provided by Hole Hiking.  As Eco Tour has shown, Hole Hiking has other tour operations in which these items could be used.  *See http://www.holehike.com/ski-snowshoe-winter-tours/* ("Tours are offered in Grand Teton National Park and in the surrounding National Forest").  Hole Hiking also refers in its email to having "requests" for tours in February 2018, but specifically does not assert that these "requests" are actually reservations or that Eco Tour cannot provide these tours.  *Id.*  Thus, the email demonstrates no disruption to the public if the contracts are awarded to Eco Tour.

In addition, while the owner of Hole Hiking asserts at one point that "[i]f forced, I will fight for my winter permit," she also asserts that she does not want to get involved in a court case.  *Id*.  Therefore, it is unclear what exact action Hole Hiking is claiming it would engage in to "fight," but it clearly does not include a lawsuit.  *Id*.  Nor does Hole Hiking ever assert that it would file a claim against NPS, but only refers to fighting "for" its permit.  Notably, as does NPS, Hole Hiking continues to believe both the Court of Federal Claims and this Court are in

error as to the legality of NPS's actions and that NPS "has conducted this process fairly and extremely well." *Id*.   Thus, if this case were dismissed, both NPS and Hole Hiking would clearly continue on with their illegal contracts under the view that they are perfectly legal and, if given the opportunity, repeat this conduct again.   This outcome reveals that, if the illegal *status quo* was allowed to continue, the message to all federal agencies would in fact be that "violation of statutory provisions and regulations designed to ensure fairness in considering bid proposals may occur with virtual impunity," which is the message the Court has recognized would be troubling.  Mem. Op. at 49.

## IX.   Conclusion

For the reasons set forth above and in its Supplemental Briefing Pursuant to Court Orders Dated April 18, 2017 and April 27, 2017 (ECF No. 37), Eco Tour Adventures, Inc. respectfully requests that the Court award equitable relief as identified in its supplemental brief.

Respectfully submitted,

 /s/ Kevin R. Garden
Kevin R. Garden, DC Bar No. 426745
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
Tel.:  (703) 535-5565; Fac.: (703) 997-1330
Counsel for Plaintiff
Eco Tours Adventures, Inc.

Dated:  June 28, 2017